LEGROS ET AL., APPELLANTS, *v.* TARR ET AL., APPELLEES.

[Cite as Legros *v.* Tarr (1989), 44 Ohio St. 3d 1.]

(No. 88-279—Submitted March 8, 1989—Decided June 28, 1989.)

4

*Carney & Broadbent* and *Richard O. Mazanec,* for appellant Legros.

*Kohrman, Jackson & Krantz, Gregory M. Lichko* and *Sarah Gabinet,* for appellant Butcher & Singer.

*Weston, Hurd, Fallon, Paisley & Howley, John S. Kluznik* and *Mary E. Golrick,* for appellee Burning Hills Steel Co.

HOLMES, J. The controlling issue presented by this case is whether appellants are entitled to recover a commission, or finder's fee, in *quantum meruit,* from appellees, based upon the theory of quasi-contract, or contract implied in law. As to one of the appellants, Butcher & Singer, we answer such query in the affirmative and thus, in this respect, reverse the court of appeals. However, we affirm the court of appeals' holding that appellant Legros, due to his employment relationship with appellant Butcher & Singer, is not entitled herein to a share of the finder's fees awarded by the trial court.

As a threshold matter, we feel it is useful to clarify each appellant's role in the corporate acquisitions at issue here. Although the lower courts referred to Legros as an investment broker and spoke in terms of broker's commissions, there exists in the law a distinction between investment brokers and business opportunity finders. "A business finder is one who finds, interests, introduces, and brings parties together for a transaction that they themselves negotiate and consummate. A finder is an intermediary or middleman who is not necessarily involved in negotiating any of the terms of the transaction." Scharf, Shea & Beck, Acquisitions, Mergers, Sales, Buyouts and Takeovers (1985) 39. Essentially, the business finder is selling confidential information he has developed himself. The identity of a potential acquisition candidate is the stock in trade of a finder or investment banking house.

In contrast, a broker not only introduces the parties but also negotiates on behalf of one of the parties with the best interests of such party being his charge. *Id.; French* v. *Toledo* (1909), 81 Ohio St. 160, 167, 90 N.E. 160, 161; see, also, 13B Fox, Business Organizations (1987), Section 30.02, and cases cited therein; 1 Herz & Baller, Business Acquisitions (2 Ed. 1981) 91, Section 3.101; Augustine & Fass, Finder's Fees in Security and Real Estate Transactions (1980), 35 Bus. Law. 485, 486. In the instant case it is obvious, both from the contract between the parties and the actual activities of Legros, that Union Metal employed Butcher & Singer to act merely as a business finder, not a broker.

Although the distinction between a finder and a broker is often more apparent than real, inasmuch as a person may act as a finder in one transaction and as a broker in another, Herz & Baller, *supra,* at 92, and is an area of the law which the courts of Ohio have heretofore not addressed, a review of the law of other jurisdictions demonstrates that an important difference exists in the circumstances under which finders and brokers may be com-

pensated. In general, a broker retained to procure a buyer or seller of a business is entitled to a commission if he (1) produces a buyer or seller who is ready, willing and able to buy or sell on the principal's terms, and (2) the transaction, or the readiness to perform on the principal's terms, directly results from the broker's efforts, without a break in continuity. Fox, *supra,* at Section 30.04[1]. In essence, a broker earns his fee only if he was the "procuring cause" of the transaction, *Canaday* v. *Brainard* (1958), 51 Del. 226, 144 A. 2d 240; *Bauman* v. *Worley* (1957), 166 Ohio St. 471, 2 O.O. 2d 473, 143 N.E. 2d 820 (real estate brokers), even if the transaction is never actually finalized. *Lane — The Real Estate Dept. Store, Inc.* v. *Lawlett Corp.* (1971), 28 N.Y. 2d 36, 319 N.Y. Supp. 2d 836, 268 N.E. 2d 635 (real estate); *Alphen* v. *Bryant's Market* (1952), 329 Mass. 540, 109 N.E. 2d 152; *Rainier v. Champion Container Co.* (C.A. 3, 1961), 294 F. 2d 96; *John F. Fleming, Inc.* v. *Beutel* (C.A. 7, 1968), 395 F. 2d 21.

On the other hand, in the absence of contractual terms to the contrary, a finder is entitled to a commission or fee only if his introduction results in a transaction, irrespective of whether a third person brings the parties to agreement. *Consolidated Oil & Gas, Inc.* v. *Roberts* (Colo. 1967), 425 P. 2d 282; *Minichiello* v. *Royal Bus. Funds Corp.* (1966), 18 N.Y. 2d 521, 277 N.Y. Supp. 2d 268, 223 N.E. 2d 793, certiorari denied (1967), 389 U.S. 820; *Peebles* v. *Prudential Ins. Co.* (C.A. 6, 1940), 110 F. 2d 76. The causation, or "procuring cause," requirement is satisfied by the mere introduction, even if negotiations are abandoned and later successfully resumed, provided the renewed negotiations are connected to and stem from the original introduction. *Bushkin Assoc., Inc.* v.

*Raytheon Co.* (C.A. 1, 1987), 815 F. 2d 142, 151-152; *Simon* v. *Electrospace Corp.* (1971), 28 N.Y. 2d 136, 320 N.Y. Supp. 2d 225, 269 N.E. 2d 21; *Schaller* v. *Litton Indus., Inc.* (E.D. Wis. 1969), 307 F. Supp. 126; *Slotkin* v. *Willmering* (C.A. 8, 1972), 464 F. 2d 418. Although the contract between Butcher & Singer and Union Metal states that, in addition to locating acquisition prospects, Butcher & Singer will assist Union Metal "in negotiations * * * as we both deem appropriate to completing the transaction," the payment of compensation was contingent solely on a completed acquisition or divestiture with a party identified by Butcher & Singer. This contract form, in addition to the evidence in the record that Legros did not actively negotiate on behalf of Union Metal with either Speedrack or Wisconsin Bridge, establishes appellants as mere finders with respect to these transactions.

Appellees' chief contention, and the basis of the court of appeals' opinion, is that no contract was established between appellants and appellees such that appellants were entitled to recovery of a fee. It is clear that the only express contract was the one between Butcher & Singer and Union Metal, and that this contract, standing alone, cannot bind Burning Hills.

However, it is well-established that there are three classes of simple contracts: express, implied in fact, and implied in law. *Hummel* v. *Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 223, 14 N.E. 2d 923, 925-926; *Rice* v. *Wheeling Dollar Savings & Trust* (1951), 155 Ohio St. 391, 44 O.O. 374, 99 N.E. 2d 301. "In express contracts the assent to its terms is actually expressed in offer and acceptance. In contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is

shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts. *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gaffney,* 65 Ohio St., 104, 61 N.E., 152." *Hummel, supra.*

The court of appeals below correctly held that no contract *implied in fact* existed here, stating, "[n]o circumstances existed which could have reasonably caused Burning Hills to believe it would have to compensate Legros or B&S [Butcher & Singer] for their services, since Burning Hills did not authorize Legros or B&S to act as its procuring agents." The case relied on by the court of appeals, *Ostendorf-Morris Co.* v. *Slyman* (1982), 6 Ohio App. 3d 46, 6 OBR 156, 452 N.E. 2d 1343, dealt solely with the issue of an implied-in-fact contract, concerning a real estate broker who *volunteered* his services without the knowledge or assent of the defendants. Similarly, in *Suter* v. *Farmers Fertilizer Co.* (1919), 100 Ohio St. 403, 126 N.E. 304, the court held that a valid contract implied in fact had been established where the services of the broker involved were ratified and a written contract of compensation had been prepared, even though the broker's services were originally volunteered. This court noted: "If his services were rendered without employment, express or implied, as a mere volunteer and without acceptance under the circumstances named, he cannot recover." *Id.* at 408-409, 126 N.E. at 305. In the instant case, since no "meeting of the minds" was shown between appellants and Burning Hills by the surrounding circumstances, no contract implied in fact existed.

However, it is also clear that appellants' services were not volunteered, but followed from a valid finder's agreement with Union Metal, through Tarr, its former agent. Although a party to an acquisition is ordinarily held to have no liability to a finder in the absence of a contract, express or implied in fact, to pay for such finder's services, an exception exists where the party or its agent misappropriates the finder's proprietary information and uses it to such party's benefit, in which case an agreement to pay may be implied in law and the finder can recover in *quantum meruit.* Fox, *supra,* at Sections 30.02[1] and 30.05[2][e]; *Bradkin* v. *Leverton* (1970), 26 N.Y. 2d 192, 309 N.Y. Supp. 2d 192, 257 N.E. 2d 643.[1] We hold that such a quasi-contract existed here, which precluded Tarr and his principal, Burning Hills, from denying an obligation to pay for the information supplied by appellants and misappropriated by Tarr.

As already stated, see *Hummel, supra,* a quasi-contract or contract implied in law is not really a contract at all, but is an "obligation that is created by the law without regard to expressions of assent by either words or

---

[1] *Ostendorf-Morris Co., supra,* and *Suter, supra,* are thus not dispositive here as they do not reach the issue of a contract implied in law, or quasi-contract.

acts," 1 Corbin on Contracts (1963) 44, Section 19, and is imposed to prevent a party from retaining money or benefits which in justice and equity belong to another. *Hummel, supra,* at 528, 11 O.O. at 224-225, 14 N.E. 2d at 927; 1 Williston on Contracts (3 Ed. 1957), Section 3A; Corbin on Contracts, *supra; Rice, supra.* In *Bradkin* v. *Leverton, supra,* Bradkin was employed by H. L. Federman & Co., Inc. to find corporations which needed financing, pursuant to a written finder's fee contract. Bradkin supplied such information to Federman & Co., of which Leverton was an officer, director and nonvoting stockholder. As a result of his position, Leverton used the information provided regarding Mauchly Associates, Inc., to arrange a private financing, without Bradkin's knowledge, and took a finder's fee for himself. The New York Court of Appeals, finding the complaint stated a cause of action in quasi-contract, held that "[s]ince the defendant * * * took unto himself the Mauchly financing, he obtained the benefit of the plaintiff's labors and must compensate him for such services." *Id.* at 197-198, 309 N.Y. Supp. 2d at 196, 257 N.E. 2d at 646.

The court noted that the defendants' obligation could not be defeated by the absence of a writing between plaintiff and defendant. "[T]he contract required to be in writing [by the Statute of Frauds][2] is one between the finder and the principal or employer with whom he has assertedly contracted and from whom he seeks compensation. * * * Quite manifestly, the purpose of the statute is to protect against fraudulent dealings *between the finder and his employer,* not between the finder and a third party, such as the defendant before us. Since there is no danger of 'unfounded and multiple claims for commissions' where a third party is concerned, the Statute of Frauds provides no defense to him. When, therefore, a finder's contract meets all the requirements of the statute, a third party may not 'take over' that contract and then evade his obligation to the finder by relying upon the statute. This is precisely what the present defendant is attempting to do. * * *" (Emphasis *sic* and footnote added.) *Id.* at 199, 309 N.Y. Supp. 2d at 197-198, 257 N.E. 2d at 646-647. See, also, *Hummel, supra,* at 528-529, 11 O.O. at 225, 14 N.E. 2d at 927; but, see, *Hughes* v. *Oberholtzer* (1954), 162 Ohio St. 330, 55 O.O. 199, 123 N.E. 2d 393. We find this reasoning persuasive in the case before us.

The record below demonstrates

---

[2] New York's Statute of Frauds, contained in Section 5-701 of the General Obligations Law, contained a specific provision for business finders contracts of the type at issue here:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

"* * *

"10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein * * *. 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. *This provision shall apply to a contract implied in fact or in law to pay reasonable compensation.*" (Emphasis added.)

Ohio's Statute of Frauds, R.C. Chapter 1335, contains no similar provision.

that Tarr, solely through his position with Union Metal and its contract with appellants, learned of the opportunity of acquiring Speedrack, and used such proprietary information to engage in personal dealings with Jack James (including the formation of Burning Hills). The record reflects that Union Metal never lost interest in acquisition of Speedrack, and never released it to Legros for his use in other dealings.

Due to his general experience and his specific knowledge of Speedrack and Wisconsin Bridge, which were subsequently acquired by Burning Hills, Tarr received the benefit of a substantial salary from, and forty-four-percent interest in, Burning Hills. Thus, both Tarr and Burning Hills obtained a benefit from Legros' services, and are liable in quasi-contract to pay for those services. In this respect, we cannot agree with the court of appeals' view of the record, nor its treatment of the law, and thus reverse that court's decision and reinstate the judgment for Butcher & Singer against appellees.

However, we concur in the holding of the court of appeals that Legros is not entitled to any amount as ordered herein as he was, at all relevant times, an employee-agent of Butcher & Singer, paid by salary, and with no arrangement for any payment from commissions. The record reflects that Legros was employed by Butcher & Singer at the time he provided and developed the names of Speedrack, Inc. and Wisconsin Bridge to Union Metal — through Tarr. The only evidence relating to employees sharing in commissions was that of Legros upon cross-examination where he testified that commissions earned by the finders would go into a "pot" and would be divided between the members of the group; "but the pot never had anything in it," apparently due to But-

cher & Singer's negative cash flow. Also, the contract with Union Metal stated that Butcher & Singer, not its employee-agent, would be entitled to a commission up to one year after termination of their agreement for acquisitions with a party identified by Butcher & Singer. Although Union Metal reimbursed Legros for expenses, all payments were made to Butcher & Singer. Additionally, an officer of Butcher & Singer testified, and the trial court found, that when Butcher & Singer closed its Cleveland offices in July 1980 its former employees were free to pursue any *new* business it wished, but any ongoing business or any transaction *initiated at the firm* remained the property of Butcher & Singer. The departing employee had an obligation to disclose such ongoing business to Butcher & Singer, but Legros failed to so disclose the purchase of Speedrack by Burning Hills.

In that Butcher & Singer was the principal contracting party to whom any commission would have to be paid pursuant to the contract, and in that the evidence supports the trial court's findings of fact that Legros was an employee of Butcher & Singer paid by salary and that there was no commission arrangement with Legros as an agent-employee, the commission found to be due herein must be paid to the principal, Butcher & Singer. If any amounts are in fact due to Legros from this commission it must be so proven in another proceeding between him and his former employer.

For all the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part, and this cause is remanded to the trial court to enter the appropriate judgment for Butcher & Singer in accordance with this opinion.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY, J., concurs in part and dissents in part.

SWEENEY, J., concurring in part and dissenting in part. While I agree with the majority's holding that this case involves a business finder and not a broker, I am compelled to dissent from the majority's opinion herein because I believe that there can be no liability to the business finder in this case in the absence of a contract, express or implied in fact.

In essence, it seems that the majority hopes to reach a desired result by failing to consider important facts which are determinative of the outcome of this case. In its second syllabus paragraph, the majority holds that a finder's contract may be implied in law where a party or its agent misappropriates the finder's proprietary information and uses it to such party's benefit. Upon a careful review of the record, I believe that this proposition must fail because the facts adduced below show that no misappropriation of information occurred. Rather, as the record below demonstrates, on February 13, 1981, Union Metal entered into an accord and satisfaction with Michael Tarr. See *State, ex rel. Shady Acres Nursing Home, Inc.,* v. *Rhodes* (1983), 7 Ohio St. 3d 7, 7 OBR 318, 455 N.E. 2d 489. In consideration of five thousand dollars, Union Metal authorized Tarr and Burning Hills to acquire Speedrack and Wisconsin Bridge, and thus use the information gained by Tarr concerning these corporations while he was employed at Union Metal. As a result of this accord and satisfaction, it cannot be said that Tarr misappropriated proprietary information while at his former position with Union Metal.

Hence, it is my view that this renders the majority's second syllabus paragraph superfluous, ineffective and inapplicable because the basis of its decision in finding a contract implied in law rests on the erroneous conclusion that Tarr misappropriated the information he received while in the scope of his employment with Union Metal. Consequently, under these circumstances, an agreement to pay the appellants cannot be implied in law or by a contract expressed or implied in fact.

Additionally, I find the majority's reliance on *Bradkin* v. *Leverton* (1970), 26 N.Y. 2d 192, 309 N.Y. Supp. 2d 192, 257 N.E. 2d 643, to be misplaced since that cause is inapposite to the one before us. In *Bradkin,* the determinative issue involved a third party's attempt to take over a finder's contract and then avoid his obligation to the finder by relying on New York's Statute of Frauds. In the case *sub judice,* however, the Statute of Frauds was never an issue and is not determinative of the issues developed below. Thus, unlike the majority, I find the reasoning in *Bradkin* not persuasive since it is readily distinguishable from the case at bar.

Therefore, based on these reasons, I would affirm the judgment of the court of appeals below in its entirety.