OPINION
{¶ 1} Plaintiff-appellant, Designcrete, Inc. (hereinafter "appellant"), appeals from the decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee Steven Stone Masonry, Inc. (hereinafter "appellee").[1] For the reasons which follow, we affirm the judgment of the trial court.
 {¶ 2} In September, 1999, South-Western City Schools (hereinafter "South-Western") contracted with Apex Construction, L.L.C. (hereinafter "Apex"), as general contractor, for the construction of Park Street School (hereinafter "school"). Apex subsequently executed a contract with appellant, as a sub-contractor, to provide concrete materials, services, and labor for the construction of the school. Apex contracted with appellee, also as a sub-contractor, to provide masonry materials, services, and labor for the construction of the school. Appellant and appellee began work once their respective contracts were executed.
 {¶ 3} On or about December 15, 1999, appellant was finishing the installation of concrete flooring at the school. While the flooring was being done, a concrete block wall constructed by appellee collapsed, injuring two of appellant's employees, Craig R. Grunkenmeyer and Mark Wickensimer. Mr. Grunkenmeyer sustained severe injuries to his feet, legs, and arms. Mr. Wickensimer suffered injuries to his hand, fingers, and elbow, as well as other parts of his body. The wall also fell on the concrete flooring.
 {¶ 4} Messrs. Grunkenmeyer and Wickensimer filed for workers' compensation benefits, which they received. As a result of the falling concrete block wall, appellant incurred costs for wage continuation for each of these men and their injuries, which amounts, to date, to approximately $40,000. Moreover, appellant has incurred, or may incur, costs due to an increase in its workers' compensation premium and/or risk in addition to placing appellant's group rate experience in jeopardy.
 {¶ 5} Accordingly, on December 13, 2001, appellant filed a complaint against appellee asserting claims for negligent construction, negligent supervision, breach of contract, breach of third-party beneficiary contract, willful conduct, breach of express warranties, breach of implied warranties, and violation of public policy.[2] On December 27, 2002, appellee filed a motion for summary judgment with respect to all claims asserted by appellant against it.
 {¶ 6} On May 5, 2003, the trial court sustained appellee's motion for summary judgment. The trial court concluded appellant failed to present any evidence with respect to the claims of willful and wanton conduct and violation of public policy. Moreover, the negligence claims failed as they were premised purely on a theory of negligence. The trial court held the claim for breach of implied warranties was deficient as an implied warranty arises by operation of law and a duty to an employer's injured employee does not exist by operation of law. Finally, the trial court determined appellant was unable to recover under the theories of breach of contract and breach of express warranty as appellant was not a third-party beneficiary of appellee's contract with Apex.
 {¶ 7} Appellant timely appeals and asserts the following assignment of error:
[1.] The Trial Court improperly granted summary judgment to Defendant Appellee in this matter on all Counts of Plaintiff Appellant's Complaint, as the Trial Court improperly determined as a matter of law that Appellant may not recover from Appellee under the theory of contract or warranty.
A. The Trial Court improperly determined that Appellant was not an intended third party beneficiary of the contract between Apex Construction, Inc. and Appellee.
B. The Trial Court improperly determined that Appellee and Appellant had no legal relationship based upon either contract or warranty and owed no contractual duty to Appellant.
 {¶ 8} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 9} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip.,Inc. (1991), 58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 10} The first issue to be determined is whether appellant was an intended third-party beneficiary of the sub-contract between appellee and Apex. Contrary to the trial court's finding, appellant contends it was an intended third-party beneficiary of the sub-contract. In support, appellant contends paragraph two of the last page of the sub-contract with Apex clearly and unambiguously reveals that appellee contracted to accept responsibility for the safety of its work, not only in its own work area but in any area that it controlled. Moreover, appellant argues appellee assumed the contractual duty to avoid exposing other contractors at the school site to hazardous conditions. As such, appellant asserts these express terms stand as a contract to hold appellee liable to appellant.
 {¶ 11} Furthermore, appellant asserts paragraphs 4.3.1, 4.5.1, 4.6.1, and 4.6.2 of the sub-contract establish express contracts and/or warranties from appellee to appellant. Paragraph 4.3.1 requires appellee to take reasonable precautions to comply with safety measures for "the safety of persons and property" on the school site. Additionally, in paragraph 4.5.1, appellee provides a warranty to submit work and materials free from defect. Paragraph 4.6.1 indemnifies appellant as Apex's agent. Paragraph 4.6.2 contains specific language regarding safety on the school site and states liability shall not be limited by Ohio workers' compensation laws. Appellant asserts the aforementioned paragraphs, read alone or in conjunction with the last page of the contract between appellee and Apex, set forth express duties for appellee to maintain safety on the school site.
 {¶ 12} In response, appellee asserts appellant cannot demonstrate an express contract or warranty existed between it and appellee. There is no dispute a contract did not exist between appellee and appellant. Instead, appellant argues certain paragraphs of the sub-contract create a contractual obligation between appellee and itself. Appellee maintains, contrary to appellant, the relied upon terms do not create contractual obligations owed to appellant. Appellee contends the duty owed was to appellant's employees.
 {¶ 13} Moreover, appellee maintains there is no express contractual obligation which provides appellant a vehicle to recover increased workers' compensation premiums and costs from appellee, let alone any express contractual duty by appellee. Appellee asserts appellant is seeking the creation of a third-party beneficiary and/or warranty claim where none exits. In reality, appellee's performance of the sub-contract was intended to benefit Apex and South-Western, not appellant.
 {¶ 14} In order for a state fund employer, who has incurred increased workers' compensation premiums due to an injury suffered by an employee, to recover damages against a third party who negligently caused injury to the employee, there must be a legal relationship based upon contract or warranty between the employer and the third party. Cincinnati Bell Tel. Co. v.Straley (1988), 40 Ohio St.3d 372, paragraph one of the syllabus. In so holding, the Cincinnati Bell court reiterated the holding of Midvale Coal Co. v. Cardox Corp. (1949),152 Ohio St. 437:
Where a third party negligently injures an employer's employee and such injury is a direct result of a breach of contract which the third party had with employee's employer, and as a direct result of such breach the employer suffers damages, such damages are recoverable against the third party in an action for breach of contract.
Paragraph two of the syllabus.
 {¶ 15} As such, appellant must establish appellee owed it duties pursuant to contract or warranty. Legally, the "word `contract' includes every description or agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act." Terex Corp. v. Grim Welding Co. (1989),58 Ohio App.3d 80, 82. In Ohio, contracts are either express, implied in fact, or implied in law. Legros v. Tarr (1989),44 Ohio St.3d 1.
 {¶ 16} The parties' actual agreement to an express offer and acceptance constitutes an express contract. Id. A contract implied in fact is not created or evidenced by the explicit agreement of the parties. Instead, the agreement between the parties is inferred from the surrounding circumstances. Id. Finally, a contract implied in law does not have a "meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit."[3] Id. at 13.
 {¶ 17} A duty to an injured employee's employer does not exist as a result of "pronouncements of common law, by legislative enactment, or by operation of law." CincinnatiBell, supra, at 380, citing Midvale, supra. Therefore, appellant may not recover based upon a breach of a contract implied in law.
 {¶ 18} Appellant contends it was a third-party beneficiary of the sub-contract. A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise. Chitlik v. Allstate Ins. Co. (1973),34 Ohio App.2d 193, 196. An intended beneficiary is one who has enforceable rights under the contract, in contrast to an incidental beneficiary who has no rights of enforcement. Hill v.Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36,40. To be an intended beneficiary, the contract must be entered into with the intent to benefit that person. Doe v. Adkins
(1996), 110 Ohio App.3d 427, 436. If there is no intent to benefit the person, he is an incidental beneficiary with no enforceable rights under the contract. Laverick v. Children'sHosp. Med. Ctr. of Akron, Inc. (1988), 43 Ohio App.3d 201. "`The mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary.'" Hill,
supra, at 40, quoting Norfolk W. Co. v. United States (C.A. 6, 1980), 641 F.2d 1201, 1208.
 {¶ 19} In support of its argument that it is a third party beneficiary, appellant relies upon the following language in the last page of Exhibit C of the sub-contract (hereinafter "Exhibit C"):
I further understand that, with the complex issues involved on coordinating work on a MULTI-EMPLOYER job site, that we mustclosely supervise our own safety and health issues.
 I will be responsible for, not only my work area, but anyother work area that I control. So that I do not expose othercontractors to hazardous conditions.
(Emphasis in original.)
 {¶ 20} A complete examination of Exhibit C reveals its focus is on safety-related issues in the workplace. The introductory paragraph states:
OSHA enforcement has changed to address the employer site. They look closely at the CONTROLLING employer to eliminate workplace hazards. * * * It is very important to work closely with allother contractors to remove hazards on site, whether or not you have exposed employees. * * *
Additionally, it provides instruction as to the procedure in the event the site is inspected:
If there, is a job site inspected by any safety inspector or OSHA, call Apex * * * at the main office at once. By policy, youare to request that they wait for the safety director. * * *
(Emphasis in original.)
Finally, the paragraph preceding the two relied upon by appellant further enforces the focus on safety-related issues:
I have read and understand the Safety and Health requirements of Apex * * * [a]nd agree to abide by them during our work on this jobsite. I understand that * * * abiding by these rules and policies are [sic] a condition of the contract and that Apex * * * can remove us from the jobsite for infraction of them.
 {¶ 21} As such, contrary to appellant's argument, Exhibit C does not support the finding appellant was an intended third party beneficiary of the sub-contract. Instead, as the trial court concluded, the inclusion of Exhibit C reveals Apex's intent to make contractors' aware of the safety requirements, to ensure compliance, and minimize OSHA violations at the site. It does not evidence an intent to benefit appellant, or any other contractor, by indemnifying it for monies expended and/or increased premiums as a result of another sub-contractor's employee's workers' compensation claim.
 {¶ 22} Appellant additionally relies upon the following provisions of the sub-contract in support of its position it is a third party beneficiary of the sub-contract. First, paragraph 4.3.1 (hereinafter "safety provision"), which states, in relevant part:
[Appellee] shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by [Apex] and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. * * *
Next, paragraph 4.5.1 (hereinafter "warranty provision") provides in pertinent part:
[Appellee] warrants to the [South-Western], Architect and [Apex] that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted * * * that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. * * * This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Document.
Furthermore, the applicable portion of paragraph 4.6.1, pertaining to indemnification, requires:
To the fullest extent permitted by law, [appellee] shall indemnify and hold harmless the [South-Western], [Apex], Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of [appellee's] work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property * * * but only to the extent caused by the negligent acts or omissions of [appellee] * * *.
The final provision is paragraph 4.6.2 (paragraphs 4.6.1 and 4.6.2 are hereinafter collectively "indemnification provisions"), which states, in relevant part:
In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of [appellee] * * * anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation * * * shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for [appellee] under workers' compensation acts * * *.
 {¶ 23} The aforementioned paragraphs, either individually or construed together, fail to demonstrate an intent by Apex and appellee to benefit appellant, and specifically, to compensate it for costs associated with a workers' compensation claim arising during the construction of the school. Similar to Exhibit C, the safety provision is to make appellee aware of its obligation to Apex to comply with the various applicable safety requirements. It does not reveal an intent to benefit third parties who may be injured by appellee. With respect to the warranty provision, Apex and appellee expressly designated the parties they intended to benefit from appellee's warranty: South-Western, the project's architect and its consultants, and employees and agents of the aforementioned parties. Similarly, the indemnification provisions state the parties who appellee shall hold harmless and indemnify. The explicit designation of certain parties, not including appellant, in the warranty and indemnification provisions undermines appellant's argument it is an intended third-party beneficiary. Apex and appellee considered the parties they intended to benefit and specifically named them in the contract, which did not include appellant. If there was any intent to benefit appellant, as there was the other named parties, appellee and Apex would have designated it.
 {¶ 24} Moreover, Paragraph 1.3 evidences further support for the conclusion Apex and appellee did not intend appellant to be a third party-beneficiary of the sub-contract. "* * * The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and [appellee], (2) between the Owner and [appellee], or (3) between any persons or entities other than [Apex] and [appellee]." Paragraph 1.3 is not a boilerplate statement that the sub-contract does not create a contractual relationship with any party other than Apex and appellee. Instead, it specifically designates the relationships which are not to be interpreted as being created by the contract. This reveals the clear intention of Apex and appellee that the sub-contract was between them exclusively. As stated by the trial court, we fail to conceive of a more explicit manner of confining the benefits of the sub-contract between the contracting parties.
 {¶ 25} Next, appellant argues the facts support a finding of a contract implied in fact. In support of its position, appellee relies upon the various provisions regarding appellee's duty to ensure the site was safe for other contractors. However, as discussed above, the purpose of the provisions was to make appellee aware of safety requirements, to ensure compliance with the safety requirements, and minimize OSHA violations at the site. Moreover, the express language in Paragraph 1.3 explicitly undermines appellant's position, "The Subcontract Documents shall not be construed to create a contractual relationship of any kind * * * (3) between any persons or entities other than [Apex] and [appellee]."
 {¶ 26} Pursuant to Cincinnati Bell, supra, there is no legal relationship based upon express or implied contract or warranty between appellant and appellee. Therefore, appellant is unable to recover from appellee for the damages it sustained as a result of the injuries to Messrs. Grunkenmeyer and Wickensimer.
 {¶ 27} Accordingly, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus, P.J., and Bowman, J., concur.
[1] The trial court also denied appellant's motion for summary judgment. However, appellants are not appealing the denial of their motion for summary judgment.
[2] The original complaint also listed Apex as a defendant. However, appellant filed an amended complaint and dismissed Apex from the litigation. The amended complaint asserted the same claims against appellee as the original complaint.
[3] Contracts implied in law are not true contracts. They are often called quasi-contracts or constructive contracts. Id.