DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Vance and Sherry Wise, appeal the judgment of the Maumee Municipal Court, which, after a bench trial, found appellants jointly and severally liable to appellee, Barkan 
Robon Ltd., in the amount of $11,595.48 plus court costs and interest. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} This matter was initiated when appellee filed a complaint for unpaid attorney fees against appellants. Appellants did not appear at trial; their attorney moved for a continuance, which the trial court denied. The matter proceeded to a trial at which the sole witness was Mr. Robon, a principal partner in Barkan Robon Ltd. The following facts were gleaned from his testimony and exhibits introduced at trial.
 {¶ 3} Appellants, husband and wife, were the sole shareholders in VW Corporation, an Illinois corporation licensed to do business in Ohio as VW Development, Inc. The corporation acted as a general contractor on large construction projects, and appellee represented the corporation since approximately 1994 in various matters. In 1999, appellee represented VW Corporation in litigation involving the construction of a grocery store. A large portion of the legal fees at issue were generated from that representation.
 {¶ 4} Before the commencement of appellee's case, appellant's attorney stipulated that appellee did provide legal services "of the nature described" and stipulated to the reasonableness and necessity of the services. Appellant's attorney acknowledged that the sole issue in dispute was whether appellants were responsible for payment.
 {¶ 5} In preparing this matter for trial, appellee discovered that the VW Corporation had its license to act as a corporation in Ohio revoked by the Ohio Secretary of State for failing to "file the necessary corporate franchise tax reports or pay the required taxes" on February 20, 1999. Mr. Robon testified that at no point had appellants made the firm aware that the corporation had ceased to operate legally in Ohio. Appellants' counsel advanced no evidence indicating that the corporation's license had been reinstated, and did not challenge the Secretary of State's letter of revocation.
 {¶ 6} Appellee submitted an undated copy of a "Statement of Account" addressed to Mr. Vance Wise and Mrs. Sherry Wise. The statement reflects charges and credits beginning in December 1994, and continues through January 2001. Relevantly, from the period after VW Corporation ceased to be licensed in Ohio, the statement shows the following charges and credits:
Date Fee Payment Balance
Feb. 1, 1999 7,123.38 8,472.78 Apr 1, 1999 3,719.13 12,191.91 Aug 1, 1999 1,531.50 13,723.41 Feb 1, 2000 12,167.82 25,891.23 Mar 1, 2000 466.50 26,357.73 Apr 6, 2000 6,000 20,357.73 Apr 1, 2000 812.00 21,169.73 May 1, 2000 100.00 21,269.73 May 1, 2000 196.00 21,465.73 Jun 8, 2000 (refund court costs) 77.25 21,388.48 Oct 1, 2000 207.00 21,595.48 Jan 18, 2001 10,000 11,595.48
 {¶ 7} Testimony and evidence indicated that billings after April 1, 2000, were sent to appellants' home in Michigan, and not at their corporate address.
 {¶ 8} When asked why appellee had not executed an engagement letter at the start of its representation, Mr. Robon explained that his firm currently does so, but it did not do so for long-term clients whose relationship with appellee began before 2000 because it "wasn't a common practice." When asked why he billed appellants as individuals, rather than their corporation, Mr. Robon further testified, "Because they were a small company and in the contracting business where contractors go in and out of business, I always billed individuals, and the bills were billed to Vance Wise and Sherry Wise, not to the corporation." When asked whether appellee "advanced credit" to the corporation, Mr. Robon attempted to clarify:
 {¶ 9} "Our — our office policy is that when a small entity, corporate entity, whether it's a limited liability company, a partnership, limited liability partnership, a family partnership or a corporation, the clients understand that they're being billed personally because we don't want to get into the issuance of credit to clients that we know nothing about their corporate status. We would have to ask for the corporate tax returns and things like that, which most people don't want to provide, so our procedure is it's either an engagement letter or when we bill them, we put their personal names on the bill so they know it's going to them personally."
 {¶ 10} The trial court's judgment entry did not specify a ground for granting judgment to appellee. At the end of trial, however, the trial court stated that appellants were liable "at the very least, on the basis of quantum meruit * * *."
 {¶ 11} In challenge to the judgment, appellants raise a single assignment of error:
 {¶ 12} "The Court erred in its ruling that Appellants were liable to Appellee under quantum meruit theory of Appellee's case."
 {¶ 13} "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Therefore, the following analysis examines whether competent, credible evidence exists as to whether appellants were properly found liable.
 {¶ 14} It is axiomatic in Ohio that a court speaks only through its judgment entries. State ex rel. Indus. Comm. v. Day
(1940), 136 Ohio St. 477, 26 N.E.2d 1014, paragraph one of the syllabus. Here, the trial court's judgment entry did not specify the grounds upon which judgment was granted. On appellate review, therefore, if the evidence is susceptible to more than one interpretation, we must construe it consistently with the trial court's judgment. Cent. Motors Corp. v. Pepper Pike (1995),73 Ohio St.3d 581, 584, citing Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77.
 {¶ 15} A contract is created "where there is an offer by one side, acceptance on the part of the other, and a meeting of the minds as to the essential terms of the agreement." McCarthy,Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc.
(1993), 87 Ohio App.3d 613, 620. Courts recognize three types of contracts: express, implied in fact, and implied in law. Legrosv. Tarr (1989), 44 Ohio St.3d 1, 6, citing Hummel v. Hummel
(1938), 133 Ohio St. 520, 525. As to a contract implied in fact, the party claiming that a contract exists must demonstrate that the parties reached a meeting of the minds as to the terms of the transaction. Burgin v. Madden, 6th Dist. No. L-01-1267, 2002-Ohio-2636, at ¶ 27, citing Campanella v. Commerce Exch.Bank (2000), 139 Ohio App.3d 796, 808. In contracts implied in law, civil liability attaches by operation of the law upon a person who receives benefits that he is not entitled to retain.Legros v. Tarr, 44 Ohio St.3d at 6. Contracts implied in law are quasi-contracts imposed by courts to prevent unjust enrichment. Id. The existence of an actual contract precludes any finding that a quasi-contract exists. In re Guardianship ofFreeman, 4th Dist. No. 02CA737, 2002-Ohio-6386, at ¶ 29.
 {¶ 16} Quantum meruit, orally referenced by the trial court, is the measure of damages afforded in an action for quasi-contract. Black's Law Dictionary (5th Ed. 1981) 1119. Unjust enrichment, a second supporting basis advanced by appellee, is also a quasi-contractual theory of recovery. Hummelv. Hummel (1938), 133 Ohio St. 520, paragraph one of the syllabus. In order to find that appellants were unjustly enriched, and thus justify a contract implied in law, the evidence must clearly and convincingly show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183.
 {¶ 17} Applying this theory, the evidence convincingly gives rise to an "obligation that is created by the law without regard to expressions of assent by either words or acts," and which the trial court properly "imposed to prevent a party from retaining money or benefits which in justice and equity belong to another."Legros v. Tarr, supra, citing Hummel, supra, and 1 Corbin on Contracts (1963) 44, Section 19. Appellants conceded the existence of a benefit conferred upon them; although they interposed a corporate shield in order to avoid personal liability, it was undisputed that appellants benefited personally from the legal services appellee provided. Moreover, appellants' attorney did not dispute Mr. Robon's testimony that appellants had acknowledged the debt owed and that appellants, after the revocation of their corporate license, had paid toward the debt owed appellee. With no rebuttal to these facts, other than the suggestion that the defunct, fictional persona of the corporation was responsible, the trial court properly found that appellants had been unjustly enriched by receiving the benefit of legal services rendered to the corporation, by not notifying appellee of their corporate status, by not disputing the reasonableness of the service and charges, by, in effect, ratifying the contract through their payments as individuals, and then by ultimately refusing to pay the remaining amount owed. Appellants' sole assignment of error is not well-taken.
 {¶ 18} The judgment of the Maumee Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Skow, J., Parish, J., concur.