[Cite as *Poppe Law Office v. Orick*, 2013-Ohio-5662.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY


POPPE LAW OFFICE,

    PLAINTIFF-APPELLEE,                CASE NO. 10-13-07

    v.

TY ORICK,                                  O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Celina Municipal Court
Trial Court No. 12CVF00801

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  December 23, 2013


APPEARANCES:

    *David K. Goodin*  for Appellant

    *Joshua A. Muhlenkamp*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Ty Orick, appeals the judgment of the Celina Municipal Court, holding him liable to Poppe Law Office for $6,892.00 in attorney fees. On appeal, Orick claims that the trial court erred because it found that he was liable to Poppe Law Office for breach of contract arising from a purported legal fee agreement. He also requests that we award him the unused portion of the retainer he paid Poppe Law Office. For the reasons that follow, we affirm in part and reverse in part the trial court's judgment.

{¶2} On November 16, 2012, Poppe filed a complaint against Orick alleging Orick owed him "the sum of $6980.50[1] [sic]" for services Poppe rendered to B.O., Orick's minor child. On December 14, 2012, Orick filed his answer contending that he had fired Poppe and did not owe Poppe any attorney fees after the date of his termination. A trial on the matter was held on March 14, 2013. Orick represented himself pro se. The following relevant evidence was adduced at trial.

{¶3} On June 26, 2008, Orick executed a fee agreement with Poppe Law Office to represent B.O. in a criminal appeal and in post-appeal proceedings.[2] According to Orick, he attended the meeting with his wife, Dawn Orick, and

---

[1] The amount Poppe requested in his prayer for relief differed from the amount that was displayed in Poppe's bills. At trial, Poppe conceded that the correct outstanding balance was $6,892.00.

[2] Poppe was successful on appeal and was able to get B.O.'s sex conviction overturned. Poppe was also able to negotiate with the prosecutor and new charges were never filed against B.O. As a result, B.O. was no longer required to register as a sex offender.

Brenda Schneider, B.O.'s biological mother. However, Orick admitted he was the only person who signed the fee agreement that day.

{¶4} About a month later, Orick became dissatisfied with the legal services Poppe was providing. It is undisputed that Orick called Poppe to voice his unhappiness and to purportedly fire Poppe. However, at trial Poppe stated that he did not believe that Orick had the authority to fire him since B.O. was his client, not Orick. Nevertheless, Poppe admitted that Orick had the "right to say I don't want to pay you anymore * * *." Trial Tr., p. 20.

{¶5} After this phone conversation, Poppe started to send all the bills to Schneider, instead of Orick. Poppe "[could not] remember" why this happened but testified it was probably due to a change in B.O.'s residential address. *Id*. at 23. Poppe also testified that B.O. expressed a desire for Poppe to continue with the appeal even after Orick's phone call. Further, Poppe admitted that Schneider made numerous payments on the balance that was owed.

{¶6} On cross-examination, Poppe stated that he expected to get paid every month. Poppe was also asked whether he ever represented Schneider in court and he replied, "I don't think I've ever represented her." Trial Tr., p. 28.

{¶7} Orick then testified that when he retained Poppe on June 26, 2008, he was assured that Poppe would have B.O. out of custody within two weeks of receiving the retainer. It was Poppe's failure to secure B.O's release from custody

that led Orick to purportedly fire Poppe. Orick testified that he did not make any payments to Poppe after giving him a $1,500.00 retainer at their June 26, 2008 meeting. He also stated that he had not received any bills, besides the first one, dated July 22, 2008. Orick also pointed out how his name was never listed on any subsequent bills in regard to B.O.'s case.

{¶8} Orick introduced a letter written by B.O. into evidence. The letter, which was drafted while B.O. was still in custody, states, in relevant part:

> [Poppe] is coming up here to talk to me because he got a call that said we are stopping the appeal. * * * Dad I know you said you weren't going to court but you should to see whats [sic] going on. I'm going to see if I can call you or have [Poppe] call you. Because *I don't want to stop the appeal, we could still win.* * * * *I don't want* to be on house arrest for a year and a half.

(Defendant's Exhibit A, p. 1). Orick also introduced a judgment entry filed in the Court of Common Pleas for Mercer County, Juvenile Division in Case No. 2-2007-217. The judgment entry reads, in relevant part, as follows:

> This matter came before the Court on June 22, 2009 for hearing on child support obligations as previously ordered in entry filed in June 24, 2008. The subject child was present and in the custody of his mother, Brenda Schneider. *She was represented by Attorney John Poppe.* The child's father, Tyson Orick, was also present and was unrepresented by counsel.

(Emphasis added.) (Defendant's Exhibit B, p. 1).

{¶9} On cross-examination, Orick admitted that he signed the fee agreement and acknowledged his signature. On redirect, Orick explained,

> I think all my exhibits show, it started out with a note I hired Mr. Poppe to do a job for me. It was not done to my satisfaction, as I am in the service business also. I took it upon myself to fire Mr. Poppe. I paid what I had to pay for him. It was abolished and moved onto Ms. Schneider, his mother. All the bills show and states they were sent to her and not me.

Trial Tr., p. 42.

{¶10} On March 20, 2013, the court issued its judgment entry finding in favor of Poppe Law Office. The trial court ordered Orick to pay Poppe Law Office $6,892.00 with an interest rate of three percent per year.

{¶11} Orick timely appealed this judgment, presenting the following assignment of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANT ORICK WAS RESPONSIBLE FOR THE PAYMENT FOR LEGAL SERVICES PERFORMED BY POPPE FOR APPELLANT'S SON AFTER SUCH TIME AS POPPE WAS TERMINATED.**

{¶12} In his sole assignment of error, Orick argues that the trial court erred by ruling in favor of Poppe Law Office on his breach of contract claim and by failing to award him the unused portion of the retainer he paid. We agree with Orick as to the breach of contract claim, but disagree as to the trial court's failure to award him the unused portion of the retainer he paid.

*Breach of Contract Issue*

**{¶13}** This matter implicates the construction of Orick's and Poppe's contractual relationship. As such, this matter presents a question of law, and this court employs a de novo standard of review. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996). In applying de novo review, we grant no deference to the trial court's judgment. *Twigg v. Trapp*, 3d Dist. Seneca No. 13-05-44, 2006-Ohio-3236, ¶ 5.

**{¶14}** In their briefs, both Orick and Poppe center their arguments on whether Orick was able to terminate Poppe from providing legal services to B.O. Orick contends that he was able to terminate Poppe's and B.O.'s attorney-client relationship and does not owe Poppe any legal fees after the date of termination. However, Poppe argues that Orick was incapable of firing Poppe, since Poppe's client was B.O., not Orick. While the ability of Orick to terminate Poppe is relevant to our analysis, it is not dispositive. The more important factors to consider are whether a valid contract existed between Orick and Poppe and whether Poppe's conduct dissolved the contract.

**{¶15}** The resolution of this matter implicates the three types of contracts: express, implied in fact, and implied in law. *Legros v. Tarr*, 44 Ohio St.3d 1, 6 (1989); *Rice v. Wheeling Dollar Sav. & Trust Co.*, 155 Ohio St. 391 (1951); *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938). In an express contract, the

approval of its terms is actually expressed in the offer and acceptance. *Legros* at 6. Meanwhile, "[i]n a contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Id*. at 6-7. Finally, contracts implied in law do not have a meeting of the minds, rather, "civil liability arises out of the obligation cast by law upon a person * * *. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual." *Hummel* at 525; *see also Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney*, 65 Ohio St. 104 (1901). We accordingly consider whether any type of contract existed in this matter and could support Poppe Law Office's recovery for breach of contract.

*Express Contract*

{¶16} Here, Poppe Law Office argues that the fee agreement Orick signed is an express contract which obligates Orick to pay B.O.'s attorney fees. We disagree. Looking at the single-page fee agreement provided in the record, we see that Orick's signature is on the line that says "*client* signature." (Emphasis added.) (Plaintiff's Ex. 1). There is no mention anywhere in the fee agreement that B.O. is Poppe's actual client and that Orick is only paying attorney fees incurred during Poppe Law Office's representation of B.O. Further, Poppe Law

Office, the actual party to this appeal, is not listed anywhere in the fee agreement. Although the fees for John Poppe are explained in the fee agreement, the actual party to this suit is not named.

{¶17} Thus, if we were to interpret the fee agreement as an express contract, Orick was Poppe's client and could terminate his services at any time. Further, we are unsure if Poppe Law Office actually has standing to bring this suit, since it was not a party to the purported contract.

{¶18} Even if we were to read the fee agreement as an express contract wherein Orick would pay Poppe Law Office for Poppe's representation of B.O. on appeal, it was clearly abandoned by Poppe. "Parties who have entered into a contract may, by mutual consent or conduct, abandon the contract which they have entered into." *Hunter v. BPS Guard Serv., Inc.*, 100 Ohio App.3d 532, 541 (10th Dist. 1995). A contract will be considered abandoned when the acts of one party, which are inconsistent with the contract, are accepted by the other party. *Id.* Thus, "mutual abandonment of a contract need not be express, but can be inferred from the conduct of the parties and the surrounding circumstances." *Id*; *Dickson v. Wolin*, 18 Ohio Law Abs. 107 (1934); *see also*, *Bryant v. Richfield Properties*, 9th Dist. Summit No. 14533, 1990 WL 129237 (Sept. 5, 1990). When one party abandons the contract, the other party can consent to the abandonment and the contract is then dissolved. *Hunter* at 541. When this happens, "the parties are

restored to their original positions and neither party may sue for breach of the contract, nor compel specific performance." *Id.*

{¶19} In this case, Orick called Poppe Law Office in the summer of 2008 to tell Poppe he was unsatisfied with his performance and wished to terminate him. Although Orick may have been mistaken about his ability to "fire" Poppe, he was able to state he did not want to proceed with the fee agreement and continue paying Poppe's fees for representing his son. Poppe consented to the termination of the contract by sending all subsequent bills to Schneider. This was in contravention to Poppe's own purported contract, which states that he is required to send the bills every 30 days to his paying clients. After their discussion, Poppe never put Orick's name on a bill again or had any contact with Orick until he initiated this suit, four years later. Orick's actions made it clear he wished to abandon the contract and not continue to pay Poppe's fees and Poppe's own actions consented to the abandonment.

{¶20} Thus, any express contract that might have existed was dissolved by mutual assent and neither Poppe nor Orick may sue for breach of the contract.

*Implied in Fact Contract*

{¶21} Our finding that an express contract theory could not support Poppe Law Office's recovery does not end our inquiry here. In implied in fact contracts, the parties' meeting of the minds is shown by surrounding circumstances, the

conduct, and the declarations of the parties which infers a contract exists. *Point E. Condominium Owners' Assn. v. Cedar House Assoc. Co.*, 104 Ohio App.3d 704, 713 (8th Dist. 1995). Thus, to establish an implied in fact contract, a plaintiff may "show[] that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended." *Lucas v. Costantini*, 13 Ohio App.3d 367, 369 (12th Dist. 1983).

**{¶22}** Here, it is clear that an implied in fact contract existed. At trial and on appeal, it is undisputed that Poppe Law Office was retained to represent Orick's minor son in a criminal appeal for a sex conviction. However, to recover compensation upon an implied contract for services performed, the party performing such services must have had, at the time of performing them, an intention to claim compensation from the defendant; if the performing party expected to receive compensation from some third party, no recovery can be had. *Bick v. Perelman*, 87 Ohio L. Abs. 33 (8th Dist. 1961). It is clear from the record that Poppe was not expecting Orick to pay his son's legal fees after Orick attempted to fire him. This is evidenced by Poppe's own admission at trial that Orick had the "right to say I don't want to pay you anymore" and the glaring fact that after this discussion took place, Poppe started sending all the bills to Schneider at a separate address different than Orick's. Further, Orick's name was never listed on any subsequent bills, Orick never had any contact with Poppe until

the lawsuit was initiated, and Orick never made another payment to Poppe. Based on this conduct, we are unable to find how Poppe could expect to be paid by Orick when Poppe sent bills to a third party, at a different address, for four years. As such, any implied in fact contract between Poppe Law Office and Orick was terminated in the summer of 2008.

*Implied in Law Contract*

{¶23} Poppe also argues, and the trial court found, that Poppe is entitled to quasi-contractual relief based on the law of necessaries, which is a type of implied in law contract. In an implied in law contract, the obligation does not arise from consent, but is created by the law. *Legros*, 44 Ohio St.3d at 7-8. Thus, the liability exists from an implication of law that arises from facts and circumstances independent of agreement or presumed intention. *Cent. Natl. Bank of Cleveland v. Internl. Sales Co.*, 87 Ohio App. 207, 214 (8th Dist. 1950).

{¶24} A parent's " 'natural duty to support his [or her] children is generally recognized. In Ohio, this duty is enjoined by both statute and common law. * * *' " *Aharoni v. Michael*, 74 Ohio App.3d 260, 263 (1991), quoting *Kulcsar v. Petrovic*, 20 Ohio App.3d 104, 105 (1984). Thus, common law allows third persons to bring a cause of action against a parent for necessaries provided to minor children. *Id*. at 264. "To establish a claim for necessaries * * * plaintiff must have unofficiously [sic] and in good faith provided necessary and reasonable

goods or services with the intent to charge the defendant's credit, and only if the defendant neglected provision of such services and refused to do so." *Id.*

{¶25} In *Aharoni*, the plaintiff, a psychologist who provided counseling for the defendant's minor children, sued the defendant for an unpaid portion of the children's medical bills. *Id.* at 262. The plaintiff testified that she usually sent the original billing statements to the custodial parent, and sent photocopies to the noncustodial parents. *Id.* The defendant, meanwhile, testified that he neither entered into a contract with plaintiff for her services nor received any billing statements. *Id.* at 263. The court in *Aharoni* held that the plaintiff failed to demonstrate she was entitled to charge the defendant for services rendered because "her bare expectation that defendant would pay for the services was not enough to establish a right of restitution where there was no awareness of the need for and the rendering of said services and where defendant neither requested nor refused to provide the services." *Id.* at 265.

{¶26} While we find that the payment of attorney fees of a minor child can be considered a necessary, we also find that Poppe did not establish the requirements to succeed on a third-party creditor claim. *See In re R.B.*, 166 Ohio App.3d 626, 2006-Ohio-264, ¶ 31-32 (2d Dist.) ("A parent's responsibility to adequately support his/her child would encompass paying for necessary legal services. * * * [T]he child's parents will be encouraged to hire counsel for their

child and will be advised by the Court that, if counsel is not hired, the court will appoint an attorney for the child, and that appointed counsel's legal fees may be taxed as court costs against the parents."). Poppe has failed to prove that Orick refused to provide his son with necessary services; in fact, the opposite is true. Orick was the one who retained a private attorney for his son in hopes to overturn B.O's sex conviction. However, Orick became unsatisfied with Poppe's performance and wished to terminate their relationship. Nowhere in the record can we find that Orick wished to stop the appeal altogether; instead, he just wanted Poppe to stop working on the appeal.

{¶27} Further, just as in *Aharoni*, Orick never received the original or photocopied bills for Poppe's services. Besides the first bill sent directly to Orick, the remaining 10 bills were sent to Schneider at a different address. Finally, we cannot say that Poppe provided legal services to B.O. with the good faith expectation that Orick would pay for them. Poppe was put on notice by Orick that he was not going to pay Poppe for his services; however, Poppe continued representing B.O., decided to send all subsequent bills to Schneider, and never informed the trial court or this Court (during B.O.'s appeal) of his unique predicament. In light of these circumstances, we elect to not imply a contract in law to benefit Poppe Law Office.

{¶28} Consequently, we find that Poppe Law Office is unable to recover under any theory of contracts. As such, the trial court erred in granting judgment in Poppe Law Office on its claim for breach of contract.

*Reasonable Attorney Fees*

{¶29} Orick also argued that the trial court erred by forcing Orick to pay for services where Poppe represented Schneider against Orick and for communications Poppe had with Ron Delong, a psychologist. Under App.R. 12(A)(1)(c) this argument is moot and we elect to not address it.

*Unused Retainer*

{¶30} Orick also argues that he should be refunded the amount of his unused retainer at the time he purportedly fired Poppe, which amounts to $410.50. We disagree. According to Civ.R. 13(A), "[a] pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." (Emphasis added.) Orick never stated a counterclaim for the unused retainer, nor did he raise the issue in any pleading. Thus, he has waived this issue and is barred from asserting this claim on appeal.

{¶31} Accordingly, we sustain Orick's first assignment of error insofar as it challenges the trial court's award to Poppe Law Office for breach of contract.

However, we overrule Orick's first assignment of error insofar as he seeks the return of his unused retainer.

**{¶32}** Having found error to Orick in part in the particulars assigned and argued, we affirm in part and reverse in part the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Concurring Separately.**

**{¶33}** I agree with the result of the majority, however I write separately due to the potential issue of jurisdiction. The record in this case is unclear as to whether Poppe Law Office is a legal entity that has the standing to invoke the jurisdiction of the trial court. Both a plaintiff and a defendant in a lawsuit must be legal entities with the capacity to sue or be sued. *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 589 N.E.2d 1306 (1992). "A sole proprietorship has no legal identity separate from that of the individual who owns it. It may do business under a fictitious name if it chooses, but ' * * * [d]oing business under another name does not create an entity distinct from the person operating the business.'" *Id*. at 574-75. The record in this case is silent as to whether Poppe Law Office, without

an actual human representative, is a partnership, corporation, limited liability company, or any other enterprise that may sue or be sued in its own name. Without this evidence, there is no way to tell whether the judgment is proper, so this court must assume it is. Thus, I concur with the majority's opinion.