[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Omni Energy Group, L.L.C. v. Ohio Dept. of Natural Resources, Div. of Oil & Gas Resources Mgt.*, Slip Opinion No. 2020-Ohio-5581.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5581

THE STATE EX REL. OMNI ENERGY GROUP, L.L.C. *v*. OHIO DEPARTMENT OF NATURAL RESOURCES, DIVISION OF OIL AND GAS RESOURCES MANAGEMENT ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Omni Energy Group, L.L.C. v. Ohio Dept. of Natural Resources, Div. of Oil & Gas Resources Mgt.*, Slip Opinion No. 2020-Ohio-5581.]

*Public utilities—Oil and gas—Salt-water-injection wells—Drilling permits—Ohio Adm.Code 1501:9-3-06—Mandamus—Division chief has clear legal duty to determine, forthwith, whether objections to applications are relevant and/or substantive.*

(No. 2020-0528—Submitted September 9, 2020—Decided December 9, 2020.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this original action, relator, Omni Energy Group, L.L.C., seeks a writ of mandamus against respondents, the Ohio Department of Natural Resources, Division of Oil and Gas Resources Management; department director Mary Mertz; and division chief Eric Vendel, to compel Vendel to render decisions on two saltwater-injection-well-permit applications. We grant a writ of mandamus, but instead of ordering Vendel to immediately render a decision on the applications, we order him to rule upon the validity of the objections that have been submitted concerning Omni's applications. That ruling will determine whether Vendel must issue the permits or hold a hearing on the applications. We deny the writ as to the division and as to Mertz.

**Background**

{¶ 2} In March 2019, Omni filed applications with the division to drill two saltwater-injection wells in Belmont County. Under R.C. 1509.02, the division has exclusive authority to regulate the permitting and operation of saltwater-injection wells in Ohio. Vendel, the chief of the division, is responsible for issuing or denying the permits. *See* R.C. 1509.06 and 1509.22; Ohio Adm.Code 1501:9-3-06.

{¶ 3} Ohio Adm.Code 1501:9-3-06(H) establishes four basic phases in the saltwater-injection-well-application process: first, the division verifies that the application is complete; second, the applicant gives public notice; third, the division receives comments and objections from the public; and fourth, the division chief issues or denies the permit. The first three phases are not at issue here—Omni's applications were complete as to form, Omni gave public notice, and the division received about 100 comments and objections opposing the applications.

{¶ 4} As to the fourth phase, when an objection is timely received, before issuing or denying a permit, the division chief "shall rule upon the validity of the objection." Ohio Adm.Code 1501:9-3-06(H)(2)(c). If the division chief finds that no objection is "relevant to the issues of public health or safety, or to good conservation practices, or is without substance, a permit shall be issued." *Id*. But if

the division chief finds that an objection is relevant or presents a substantive issue, "a hearing shall be called within thirty days of receipt of the objection." *Id.* After a hearing is held, the division chief may either issue or deny the permit. Ohio Adm.Code 1501:9-3-06(H)(2)(d). When no hearing is held, the division chief is required to issue the permit within 21 days after the applicant filed its proof of public notice. Ohio Adm.Code 1501:9-3-06(H)(3). When there is a hearing, the division chief is required to issue or deny the permit within 30 days after the completion of the hearing. *Id.*

{¶ 5} In this case, based on a public comment it had received, the division requested additional information from Omni because the proposed wells would be drilled through an abandoned underground coal mine. By the end of January 2020, Omni had given the division the additional information it had requested—namely, a technical study of the issue certified by a professional engineer. Respondents acknowledge that all issues concerning the abandoned coal mine have been resolved. The division has not asked Omni for any other additional information, nor has it scheduled a hearing on the applications or indicated that one will be necessary. But the division does plan to hold a "public meeting" concerning the applications. Respondents concede that neither the Revised Code nor the Ohio Administrative Code requires a public meeting and that a "meeting" is not a "hearing" under Ohio Adm.Code 1501:9-3-06(H).

{¶ 6} After the COVID-19 pandemic made an in-person public meeting impossible, the division announced that it would hold an online public meeting on April 10, 2020. But on April 8, Robert Murray sued the Department of Natural Resources in the Belmont County Court of Common Pleas, seeking a temporary restraining order to prevent the online meeting. Murray's company, Murray Energy Corporation, had objected to Omni's applications, and Murray wants the public meeting to be held in-person, not virtually. The common pleas court issued a temporary restraining order enjoining the virtual meeting, and as of the submission

of the evidence in this case, an injunction remained in place. In the course of the Belmont County case, the Department of Natural Resources has acknowledged that a public meeting is not a required part of the permitting process.

{¶ 7} The division chief has not rendered a decision on Omni's applications. On April 20, 2020, Omni filed a complaint against the division, Vendel, and Mertz, seeking a writ of mandamus compelling them to either issue or deny the permits. In its complaint, Omni also requested an order staying the Belmont County case and an award of damages, costs, and attorney fees. We granted an alternative writ on July 10. 159 Ohio St.3d 1442, 2020-Ohio-3678, 149 N.E.3d 511.

**Analysis**

{¶ 8} To be entitled to a writ of mandamus, Omni must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13.

*Omni has a clear legal right to—and the division chief has a clear legal duty to provide—a ruling on the validity of the objections submitted against the applications*

{¶ 9} Respondents do not dispute that the division chief ultimately must decide whether or not to issue the permits. They argue, however, that the division chief does not presently have a clear legal duty to make the decision, because he plans to first hold a public meeting.

{¶ 10} Respondents contend that in seeking to compel an immediate decision without a public meeting, Omni really is trying to strictly enforce the timeframes established under Ohio Adm.Code 1501:9-3-06(H)—and to force the division chief to issue the permits simply because he did not timely deny them. But respondents mischaracterize Omni's argument. Contrary to what respondents suggest, Omni does not question the division chief's continuing discretionary authority over the

4

applications. In fact, in its briefs, Omni repeatedly requests an order requiring the division chief to immediately render a decision either issuing *or denying* the permits. Respondents' argument concerning strict enforcement of the statutory and regulatory deadlines, therefore, is irrelevant to the main issue we must decide.

{¶ 11} The issue before us is whether Omni has a clear legal right to have the division chief immediately proceed to a decision on the applications and whether the division chief has a corresponding duty to do so. *Waters*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, at ¶ 6. Respondents argue that the division chief is not required to make a decision at this time because it is reasonable, and within his discretion, to conduct a comprehensive review and hold a public meeting "to be fully transparent and to satisfy local public interests."

{¶ 12} There are two aspects to this argument. Respondents first point to multiple technical issues unique to Omni's proposed wells—e.g., their proximity to abandoned coal mines, wetlands, and Interstate 70—to emphasize the need for a thorough review. But the evidence suggests that these issues have been addressed and resolved, and respondents do not argue otherwise. So even if the division chief has needed additional time to thoroughly review Omni's applications, respondents have not shown that he needs yet more time for additional review.

{¶ 13} Respondents also argue that the division chief has discretion to hold a meeting before he makes his decision "to provide a final meaningful opportunity for the public to give their input on the applications." Although they concede that no statute or rule provides for such a meeting, respondents cite *Redman v. Dept. of Indus. Relations*, 75 Ohio St.3d 399, 662 N.E.2d 352 (1996), in support of their claim that the division chief may implement whatever review process he deems proper. The issue in *Redman* was whether a statute that did not provide precise standards to guide regulatory decision-making was an unconstitutional delegation of legislative authority. *Id*. at 403. In rejecting the constitutional challenge, we applied an "impracticability exception" that allows an administrative decision-maker to exercise

discretion in applying certain police-power regulations that necessarily require flexibility in their application. *Id*. at 405, 409-410.

{¶ 14} Respondents' invocation of the impracticability exception in this case is misplaced. To begin, the exception arises when there is a question whether legislative authority has been unconstitutionally delegated. Omni does not challenge the division chief's discretionary authority; in fact, Omni seeks to compel the division chief to exercise his discretion. Moreover, even if the exception were relevant, it does not support respondents' claim that the division chief is free to add requirements to existing administrative procedures that the division itself established. *See* R.C. 1509.22(C) (requiring the division chief to "establish procedures and requirements in accordance with which a person shall apply for a permit or order for the storage, recycling, treatment, processing, or disposal of brine").

{¶ 15} Respondents argue that circumstances beyond their control—the pandemic and the temporary restraining order—have delayed the completion of the application process. But in truth, their insistence on a public meeting is to blame. Because no legal authority calls for such a meeting, the division chief has a clear legal duty to immediately proceed with the application process. *See State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Dirs.*, 75 Ohio St.3d 611, 614, 665 N.E.2d 202 (1996) ("although a writ of mandamus cannot issue to control a public body's exercise of discretion, it can be issued to compel the public body to exercise such discretion when it has a clear legal duty to do so"); *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18 (recognizing that an administrative rule adopted pursuant to legislative authority may provide the basis for a clear legal duty and a clear legal right in a mandamus case).

{¶ 16} But the specific relief Omni seeks—an order requiring the division chief to immediately render a decision either granting or denying the permits—is premature. Ohio Adm.Code 1501:9-3-06(H)(2)(c) provides that when an objection

is submitted concerning an application, the division chief "shall rule upon the validity of the objection." Such a ruling involves a determination of whether the objection is "relevant to the issues of public health or safety, or to good conservation practices" or whether the objection "ha[s] substance." *Id.* If an objection is relevant or substantive, the division chief must hold a hearing, but if an objection is not relevant or substantive, "a permit shall be issued." *Id.* No evidence shows that the division chief has ruled upon the validity of the objections as required under Ohio Adm.Code 1501:9-3-06(H)(2)(c). The division chief's only existing clear legal duty, therefore, is to make that threshold determination. That ruling, in turn, will dictate whether he must issue the permits or schedule a hearing. *See* Ohio Adm.Code 1501:9-3-06(H)(2)(c).

{¶ 17} This raises the question whether the division chief can still hold a hearing now that the deadline for scheduling one has passed. Ohio Adm.Code 1501:9-3-06(H)(2)(c) provides that if the division chief considers an objection to be relevant or substantive, "a hearing shall be called within thirty days of receipt of the objection." The last day to object to Omni's applications was July 30, 2019, so under this rule, any hearing should have been called no later than August 29, 2019.

{¶ 18} Generally, when a provision "directs certain actions with [a] view to the proper, orderly and prompt conduct of public business," it is construed as directory. *State ex rel. Jones v. Farrar*, 146 Ohio St. 467, 472, 66 N.E.2d 531 (1946). This rule applies "unless the nature of the act to be performed or the phraseology of the [provision] is such that the designation of time must be considered a limitation upon the power of the officer." *State ex rel. Smith v. Barnell*, 109 Ohio St. 246, 255, 142 N.E. 611 (1924). "The use of the word 'shall' to institute the deadline does not change this." *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 38.

{¶ 19} Ohio Adm.Code 1501:9-3-06(H)(2)(c) does not express any intent to deprive the division chief of the authority to call a hearing after 30 days from the

receipt of an objection. Because the 30-day deadline is a time restriction on the performance of an official duty, it is directory. Therefore, if the division chief finds that a timely submitted objection to Omni's applications is relevant or substantive, the failure to comply with Ohio Adm.Code 1501:9-3-06(H)(2)(c)'s deadline for calling a hearing does not deprive the division chief of his authority to conduct a hearing, nor will it prevent him, after a hearing, from either issuing or denying the permits.

*Omni lacks an adequate remedy in the ordinary course of the law*

{¶ 20} Omni seeks to compel the division chief to carry out his duties under Ohio Adm.Code 1501:9-3-06. Because an action for a mandatory injunction to compel a public official to perform a duty is itself an extraordinary remedy, Omni does not have an adequate remedy in the ordinary course of the law. *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 735, 654 N.E.2d 1258 (1995). "[U]nderlying public duties having their basis in law may be compelled by a writ of mandamus." *Id.*

{¶ 21} Although respondents suggest that Omni has an adequate remedy at law, they do not identify an alternative legal remedy that Omni could have pursued. They instead seem to argue that Omni does not need to compel the division chief to act, because he intends to complete the application process once he is allowed to hold a public meeting, either in-person or online. But as explained, the division chief lacks authority to delay the application process for a public meeting to be held. Respondents have not shown that Omni has an adequate remedy at law.

{¶ 22} Amicus curiae, Residents to Protect Eastern Ohio, L.L.C.,[1] also contends that Omni has an adequate remedy at law. It first argues that Omni will

---

1. According to its brief, Residents to Protect Eastern Ohio "is a nonprofit limited liability company whose members include the Richland Township Trustees, Belmont County Commissioners, and citizens of Ohio who share a common interest in promoting and protecting the local community from any environmental and/or public health and safety matters, including ensuring good conservation practices are occurring." The company was formed by Robert Murray.

have the right to an administrative appeal if the division chief denies the permits. But the possibility of an administrative appeal does not show that Omni has an adequate remedy—without a decision, there is nothing to appeal. Residents to Protect Eastern Ohio next argues that Omni can obtain relief in the common pleas court now that it has intervened in the Belmont County case. But as just explained, the relief that Omni could obtain in the common pleas court would be in the form of a mandatory injunction, which is not an *ordinary* remedy. Finally, Residents to Protect Eastern Ohio argues that Omni "is merely seeking an injunction specifically prohibiting ODNR from holding a public meeting." This argument misconstrues what Omni is trying to accomplish; Omni clearly seeks to *compel* the division chief to carry out his duties. Residents to Protect Eastern Ohio also has not shown that Omni has an adequate remedy at law.

*Omni has abandoned its requests for additional relief*

{¶ 23} In its complaint, Omni prayed for a stay of the Belmont County case and an award of damages, costs, and attorney fees. But Omni failed to present any argument in its merit brief supporting these requests. Omni therefore has abandoned its requests for additional relief. *See State ex rel. Cleveland Right to Life v. Ohio Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.3d 185, ¶ 1 (lead opinion).

**Conclusion**

{¶ 24} Because Omni has not suggested a basis for granting a writ of mandamus as to the division or to Mertz, we deny the writ as to those respondents. But we grant a writ of mandamus as to Vendel and order him to determine, forthwith, whether any objections submitted concerning Omni's applications are relevant and/or substantive.

Writ granted in part
and denied in part.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

{¶ 25} Because respondent Eric Vendel, the chief of the Ohio Department of Natural Resources' Division of Oil and Gas Resources Management, has failed to comply with his clear statutory duty to either grant or deny the drilling-permit applications submitted by relator, Omni Energy Group, L.L.C., within 30 days of the filing of those applications, I would grant a writ of mandamus to compel Vendel to issue an order granting or denying the applications. The majority does not, and I therefore dissent.

{¶ 26} R.C. 1509.02 grants the division exclusive authority to regulate the permitting and operation of saltwater-injection wells in Ohio. R.C. 1509.05 prohibits the drilling of a new saltwater-injection well without the owner first obtaining a permit from the division. The permitting process for a new saltwater-injection well is set forth in R.C. 1509.06. R.C. 1509.06(C)(2) provides, "[T]he chief shall issue a permit for a well or proposed well within an urbanized area within thirty days of the filing of the application unless the chief denies the application by order." Nothing in R.C. 1509.06 gives the chief discretion to disregard the 30-day time limit, although R.C. 1509.06(F) guides the chief's review of a permit application:

> The chief shall issue an order denying a permit if the chief finds that
> there is a substantial risk that the operation will result in violations
> of this chapter or rules adopted under it that will present an imminent
> danger to public health or safety or damage to the environment,
> provided that where the chief finds that terms or conditions to the

permit can reasonably be expected to prevent such violations, the chief shall issue the permit subject to those terms or conditions, including, if applicable, terms and conditions regarding subjects identified in rules adopted under section 1509.03 of the Revised Code.

{¶ 27} A separate statute regulates the *operation* of a saltwater-injection well. R.C. 1509.22(D)(1) prohibits the injection of brine or waste from oil and gas drilling, exploration, or production without a permit issued by the chief (unless a rule of the chief expressly authorizes injection without a permit). The permit required by R.C. 1509.22(D)(1) is "in addition to any permit required by section 1509.05 of the Revised Code" for drilling a new well.

{¶ 28} R.C. 1509.03(A) grants the chief general authority to promulgate "rules for the administration, implementation, and enforcement of this chapter." But R.C. 1509.22(C) also specifically requires the chief to adopt rules that "establish procedures and requirements in accordance with which a person shall apply for a permit or order for the storage, recycling, treatment, processing, or disposal of brine and other waste substances that are not subject to a permit issued under section 1509.06 or 1509.21 of the Revised Code."

{¶ 29} Therefore, the General Assembly has created one permitting process for drilling a saltwater-injection well and another for operating it. It has also provided a specific statutory procedure to be followed for the review of an application to drill a new well—including deadlines for granting or denying the application—while delegating to the chief the authority to establish the procedure for reviewing an application for *operating* a saltwater-injection well.

{¶ 30} As a division of a state agency and a creature of statute, *see* R.C. 1509.02, the division is limited to the powers conferred on it by statute, *see State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478,

56 N.E.3d 913, ¶ 51.  Administrative agencies possess only the rule-making power that is delegated to them by the General Assembly, and any administrative rule that is contrary to a statute is invalid.  *See MacDonald v. Cleveland Income Tax Bd. of Rev.*, 151 Ohio St.3d 114, 2017-Ohio-7798, 86 N.E.3d 314, ¶ 24; *Athens Home Tel. Co. v. Peck*, 158 Ohio St. 557, 562, 110 N.E.2d 571 (1953).

{¶ 31} Under R.C. 1509.06(C)(2), the chief has 30 days to grant or deny the application for a permit to drill a saltwater-injection well.  An administrative rule extending that 30-day period to provide for additional notice, objections, and a hearing on a drilling-permit application would conflict with the statute and be invalid.  The issue, then, is whether Ohio Adm.Code 1501:9-3-06(H) impermissibly extends the 30-day time period.

{¶ 32} The chief promulgated Ohio Adm.Code 1501:9-3-06 to establish a permit-application process for "[a]ny person who proposes to construct, convert to, or operate a brine injection well."  It therefore purports to apply to both the drilling and the operation of a saltwater-injection well.  The rule provides for notice, public comment, and a hearing before the chief decides whether to grant or deny the application for a drilling permit.

{¶ 33} The rule allows the chief 15 days to review and verify that the application is complete, and it requires the applicant to then provide proof of notice to the public and affected landowners within 30 days of verification of the application.  Ohio Adm.Code 1501:9-3-06(H)(1).  Objections to the application may be sent within 15 days from the filing of the proof of notice.  *Id*.  Ohio Adm.Code 1501:9-3-06(H)(2)(c) provides that if the division receives an objection to an application that the chief considers to be "relevant to the issues of public health or safety, or to good conservation practices, or to have substance, a hearing shall be called within thirty days of receipt of the objection."  The chief then must review the objection, the evidence, and the application and either grant or deny the application within 30 days of the hearing.  Ohio Adm.Code 1501:9-3-06(H)(2)(c)

and (3). If no hearing is conducted, the chief must grant or deny the application within 21 days of the applicant filing proof of public notice. Ohio Adm.Code 1501:9-3-06(H)(3).

{¶ 34} Although R.C. 1509.06(C)(2) requires the chief to approve or deny the application for a drilling permit within 30 days of its filing, Ohio Adm.Code 1501:9-3-06(H) extends that time. The chief has 15 days to review the application, the applicant then has 30 days to provide proof of public notice, and the public then has another 15 days to object to the application. If no objection is filed, or if the objection does not require a hearing, the chief must grant or deny the application within 21 days, creating a processing time of up to 81 days. If a valid objection is filed within the 15-day objection period, the chief has 30 days from receipt of the objection to call a hearing and then an additional 30 days from the date of the hearing to grant or deny the permit, allowing the chief up to 120 days to process the application.

{¶ 35} "[W]here the language of [a statute] is plain and unambiguous it is the duty of the court to give it the effect required by the plain and ordinary signification of the words used." *Marqua v. Martin*, 109 Ohio St. 56, 62-63, 141 N.E. 654 (1923). R.C. 1509.06(C)(2)'s plain meaning creates a duty on the part of the chief to grant or deny a drilling-permit application within 30 days. Because Ohio Adm.Code 1501:9-3-06(H) impermissibly extends the 30-day period mandated by the statute, it is invalid to that extent.

{¶ 36} Omni filed its drilling-permit applications on March 22, 2019, and it brought this mandamus action more than a year later, on April 20, 2020. Yet even now, more than a year and a half after the filing of the two applications, the chief has still not complied with the duty to either grant or deny them within 30 days.

{¶ 37} To be entitled to a writ of mandamus, a relator must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of a respondent to provide it, and (3) the lack of an adequate remedy in the ordinary

course of the law. *State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165, ¶ 24.

{¶ 38} R.C. 1509.06(C)(2) creates a clear legal right for an applicant to receive a decision on its application for a drilling permit within 30 days of filing, and it imposes a clear legal duty on the part of the chief to either grant or deny that application within the 30-day time period. And as the majority holds, there is no adequate remedy at law to compel the chief to comply with this duty. Therefore, mandamus will lie to enforce the 30-day time period established by R.C. 1509.06(C)(2).

{¶ 39} Here, the chief has not issued an order either granting or denying those applications even though more than 30 days have passed. No statute permits the chief to delay issuing that order until he or she has conducted a hearing or, as in this case, after a public meeting has been held. Omni has a clear legal right to a decision on its drilling-permit applications, the chief had and continues to have a clear legal duty to issue an order granting or denying them, and Omni specifically requests that relief.

{¶ 40} It is not the province of this court to second-guess the General Assembly's public-policy decision to grant the chief only 30 days to decide whether to grant or deny a drilling-permit application. If that time period is insufficient for the chief to review applications, then it is the prerogative of the General Assembly alone to grant additional time for review. However, as the law of this state currently stands, an applicant has the right to a decision on its request for a drilling permit within 30 days, and that right may be enforced through an action in mandamus. Whether the applicant may agree to allow the chief more time to review the application is a question that does not require an answer today.

{¶ 41} For these reasons, I would grant the requested writ of mandamus compelling the chief of the Division of Oil and Gas Resources Management to

either grant or deny Omni's applications for drilling permits.  Because the majority denies that relief, I dissent.

DEWINE, J., concurs in the foregoing opinion.

_____

Gagin Legal Services, L.L.C., and Christopher J. Gagin, for relator.

Dave Yost, Attorney General, and Daniel J. Martin and William S. Myers, Assistant Attorneys General, for respondents.

Shaheen Law Group, L.L.C., Michael J. Shaheen, and Kristina S. Herman, urging denial of the writ for amicus curiae, Residents to Protect Eastern Ohio, L.L.C.

_____