[Cite as *Chuma v. Patterson*, 2023-Ohio-1128.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| LAURA A. CHUMA, | : | |
| | : | Case No. 21CA12 |
| Plaintiff-Appellant-<br>Cross-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| KRISTOPHER D. PATTERSON, et al., | : | |
| | : | |
| Defendants-Appellees-<br>Cross-Appellants. | : | **RELEASED: 03/31/2023** |

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for Appellant/Cross-Appellee.

Brian S. Stewart, Circleville, Ohio, for Appellee/Cross-Appellant.

Wilkin, J.

**{¶1}** Appellant/cross-appellee, Laura A. Chuma, and appellee/cross-appellant, Kristopher D. Patterson, appeal the Pickaway County Court of Common Pleas judgment entry denying Chuma's claim for reasonable rental value and denying Patterson's claims for breach of contract and unjust enrichment. Chuma and Patterson jointly purchased a house and resided together from September 2015 to February 2017, and again from January 2018 to March 2018. Chuma physically assaulted Patterson on two occasions that resulted in her conviction for assault and the issuance of a protection order preventing her from having any contact with Patterson. As a result, Patterson had exclusive use of the house until July 2020.

{¶2} Chuma filed a partition claim in January 2019 that resulted in the parties' home being sold at auction in July 2020.  The sale proceeds were just sufficient to pay the remaining mortgage balance and all associated fees.  There were no proceeds left to divide between the parties.  After the sale, Chuma and Patterson filed the above referenced claims against each other.

{¶3} The trial court denied all claims finding that " 'according to the justice and equity of the case,' neither party should prevail against the other party." Based on the specific circumstances of the case, we affirm the trial court's decision and overrule Chuma's single assignment of error and Patterson's two assignments of error.

PROCEDURAL BACKGROUND AND FACTS

{¶4} Chuma and Patterson began a romantic relationship back in 2010. Shortly after dating, Chuma and Patterson resided together as a couple and in 2014 had their daughter.  In September 2015, they jointly purchased a house in Orient, Ohio, for $189,000.  Chuma made the down payment of over $8,000.

{¶5} Prior to purchasing the house, Chuma and Patterson reached a verbal agreement that the mortgage payment would be equally divided between them.  The parties abided by the agreement until November 2016.  According to Chuma, the agreement was modified in November 2016, with Patterson agreeing to pay the full mortgage payment when he encouraged Chuma to quit her job and stay at home with their child.  Patterson disputes that the agreement was modified, and testified that he did encourage Chuma to resign but with the understanding she would obtain other employment.

{¶6} When Chuma and Patterson were equally paying for the mortgage, Chuma was issuing the full payment from her bank account with Patterson giving her cash for his half of the payment.  But then in November 2016, Patterson provided Chuma with his bank account information in which she set up the mortgage payment to be automatically taken from his account.  Patterson made the full mortgage payment from November 2016 until March 2019, without any contribution from Chuma.

{¶7} In February 2017, Chuma physically assaulted Patterson and was arrested.  As a result, Chuma pleaded guilty to assault, a misdemeanor in the first degree, and was sentenced to probation with the condition that she has no contact with Patterson.  Chuma's probation was for 12 months, but prior to the termination of her probation, Chuma and Patterson reconciled and again resided together in January 2018.

{¶8} Less than two months later, in March 2018, Chuma again physically assaulted Patterson and was charged with domestic violence.  The charges were ultimately dismissed, but while the criminal proceeding was pending, Chuma was ordered to have no contact with Patterson.  Patterson also obtained a civil protection order in May 2018 which expired in November 2018.  The protection order against Chuma required her not to have contact with Patterson and that she must be accompanied by law enforcement when retrieving her personal belongings from the residence.

{¶9} Consequently, Patterson had exclusive possession of the jointly-owned house from March 2018 until July 2020, when he vacated the premises.

Patterson, however, stopped paying the mortgage in March 2019 after Chuma initiated partition proceedings.

{¶10} In January 2019, Chuma filed a complaint in partition asking for the jointly-owned house to be partitioned or sold and the proceeds to be divided according to equitable interests. The trial court granted an order of partition finding that Chuma and Patterson "are tenants in common, each owning an undivided one-half interest" of the house. The trial court appointed realtor Julie Dickey as commissioner to appraise the value of the house. Realtor Dickey completed and filed her report with the court in January 2020, estimating the value of the residence at $230,000. The trial court appointed a private selling officer to auction the house, and ordered that the house be sold for not less than $151,800.

{¶11} In November 2020, the trial court confirmed the sale of the house at auction for $206,000 that occurred in July 2020. The trial court ordered the sale proceeds to be distributed as follows: $190,873.25 to mortgage company; $5,244.99 for court costs; $500 to realtor Dickey; $118.34 for county treasurer; $1,267.60 for new buyer for prorated property taxes; and $7,995.82 to Chuma's attorney. The trial court also ordered that any home insurance refund returned to Patterson must be deposited with the court as a joint asset that needs to be divided. Within this order, the trial court also granted leave to the parties to "file amended pleadings setting forth claims of co-tenants, including payment of rent and other incidental damages relating to occupancy."

{¶12} Chuma filed an amended complaint and in the first claim requested

half of the rental value of the months Patterson exclusively resided at the house.

In the second claim, Chuma asserted Patterson committed, or allowed to be

committed, substantial waste to the house that lowered its value.  Within this

second claim, Chuma also maintained that Patterson's failure to pay the

mortgage while residing at the house from March 2019 until July 2020, lowered

the proceeds that were divided among them after the house was sold.

{¶13} Patterson filed a counterclaim also presenting two claims.  The first

was breach of contract based on Chuma's failure to pay half of the mortgage

payment as verbally agreed upon by the parties.  Alternatively, Patterson averred

a second claim for unjust enrichment in which Chuma benefited from Patterson

paying her share of the mortgage.

{¶14} On May 14, 2021, a full hearing was held in which realtor Dickey,

Chuma and Patterson testified.  After trial, Chuma and Patterson submitted

proposed findings of fact.

{¶15} The trial court denied Chuma and Patterson's claims.  The trial court

made the following findings of fact and conclusions of law:

> Prior to purchasing the Property, Chuma and Patterson agreed that each would be responsible for paying one-half (1/2) of each monthly mortgage payment.  Chuma made an $8,168.00 down payment from her separate funds. The Court finds that Patterson reimbursed Chuma one-half of the down payment from his separate funds.
> The agreement between the parties appears to have worked through November 2016 when Chuma began refusing to pay her one-half (1/2) share of the monthly payments, and never made a payment from that point forward.
> The Court finds that from November 2016 through March 2019 Patterson made each mortgage payment for a total of $37,584.00 in mortgage payments made by Patterson over the course of those 29 months. Patterson stopped making the mortgage

payment upon the advice of counsel. Plaintiff filed her partition complaint on January 31, 2019. The parties were already in default on the mortgage when Chuma filed her complaint. The property sold at Sheriff's Sale on July 23, 2020 for $206,000.00. The Court finds that neither party committed any waste towards the property.

Evidence revealed that the parties started having domestic problems in February of 2017. * * * Lastly, on May 16, 2018 a Domestic Violence Civil Protection Order was granted to Patterson against Chuma in Pickaway County Common Pleas Court case number 2018CPO0021. The Order required Chuma to vacate the Property and was effective for six (6) months.

* * * Chuma argues she is entitled to rents for the period of time after expiration of the restraining orders prohibiting her occupation of the Property. Thus, Chuma claims she is entitled to one-half the fair market value of $2,000.00 per month for 23 months or $23,000.00. * * * For the record, the Court notes that Chuma was prohibited from coming onto the Property per the civil protection order that expired on November 16, 2018 and thus she was excluded 20 months and not 23 months.

* * * The Court is of the opinion that simply because there "were no funds to account for" does not automatically remove this case from the equitable dictates of R.C. §5307.21[.]

* * *

This Court finds that "according to the justice and equity of the case," neither party should prevail against the other party. The Court finds that Patterson never received any "rents or profits" from the Property. While Chuma tries to lessen her criminal conduct by claiming rents "only" for the periods of time she was not under a restraining order, the Court is nevertheless convinced that awarding her any rent for any of the time she was absent from the Property would not do justice and equity to the case. Plaintiff's claim for $20,000.00 for fair rental value is DENIED. Likewise, awarding Patterson judgment for one-half ($18,793.00) the mortgage payments he made would not do justice to the case since he had exclusive use of the property. Lastly, there is no unjust enrichment to Chuma by virtue of Patterson making the monthly payments. The Property sold for basically what was owed on it. Patterson's payment of the mortgage for 29 months only decreased the mortgage payoff and resulted in little actual equity in the Property. Thus, there is no unjust enrichment. Patterson loses on his claim of unjust enrichment.

In conclusion, Plaintiff loses on her claim and Defendant loses on his counterclaim.

{¶16} Chuma and Patterson appeal the trial court's denial of their claims.

ASSIGNMENTS OF ERROR

**{¶17}** Chuma designates one assignment of error for review:

I.      THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FOUND FOR KRISTOPHER D. PATTERSON AND AGAINST LAURA CHUMA UPON HER CLAIM FOR RENT AND WASTE.[1]

**{¶18}** Patterson presents two assignments of error for review:

I.      THE TRIAL COURT ERRED IN ITS JUNE 24, 2021 DECISION AND ENTRY BY FAILING TO FIND FOR KRISTOPHER PATTERSON ON HIS CLAIM FOR BREACH OF CONTRACT AGAINST LAURA CHUMA.

II.     THE TRIAL COURT ERRED IN ITS JUNE 24, 2021 DECISION AND ENTRY BY HOLDING THAT LAURA CHUMA WAS NOT LIABLE TO KRISTOPHER PATTERSON FOR UNJUST ENRICHMENT.

I.      Chuma's Rent Claim

**{¶19}** Chuma asserts that the trial court failed to apply R.C. 5307.21, and ignored the Supreme Court's decision in *Cohen v. Cohen*, 157 Ohio St. 503, 106 N.E.2d 77 (1952).  According to Chuma, the statutory provision and the Supreme Court decision mandate that she was entitled to her share of the reasonable rental value of the house when Patterson was exclusively occupying it.  This is because Patterson wrongfully prohibited her from residing at the house, and he occupied it exclusively and resided rent free for several months before the house was sold.

**{¶20}** Chuma further argues that it is irrelevant that no rent was actually paid since the benefit was conferred to Patterson by him exclusively occupying

---

[1] At the lower court, Chuma claimed Patterson committed substantial waste to the residence causing the value to decrease.  The trial court denied the claim.  On appeal, Chuma does not advance any argument challenging the trial court's denial of her claim that Patterson committed waste that lowered the value of the residence.  Accordingly, Chuma has abandoned this claim. *See State ex rel. Omni Energy Grp., L.L.C. v. Ohio Dep't of Nat. Res., Div. of Oil & Gas Res. Mgmt.,* 164 Ohio St.3d 470, 2020-Ohio-5581, 173 N.E.3d 1148, ¶ 23.

the house.  Chuma maintains that after the civil protection order expired, Patterson wrongfully excluded her from residing at the house.  She admits that she is not entitled for the period of time that she caused her own exclusion, but is entitled to rent for the period after the expiration of the protection order.  According to Chuma, the monthly rental value is $2,000 based on realtor Dickey's testimony.

{¶21} Patterson disagrees with Chuma's overbroad reading of R.C. 5307.21 and argues *Cohen* was wrongly decided.  Under equity principles, Chuma is not entitled to any rent money as she failed to pay her half of the mortgage, no one was living with Patterson, he did not receive any rent money, and moreover, Chuma was excluded based on her own criminal conduct.  Further, Patterson challenges realtor Dickey's reasonable rental value of $2,000 per month.  Patterson maintains the trial court did not abuse its discretion in denying Chuma's request for rent money.

{¶22} In response, Chuma for the first time argues Patterson committed ouster by obtaining a protection order and threatening to call law enforcement after the restraining order expired.  Chuma maintains ouster is not subject to equitable weighing and the precedent as set forth in *Cohen* should be applied in which Chuma is entitled to half of the rental value during the period Patterson had exclusive possession of the house.  Finally, Chuma asserts realtor Dickey was qualified and her valuation of the reasonable rental value of $2,000 is admissible and should be applied.

A.  Law and Analysis

{¶23} In 1952, the Supreme Court of Ohio issued the decision in *Cohen v. Cohen*, in which the Court held that "a tenant in common of land and a residence and buildings thereon, who lives in, occupies and has sole possession of the premises, is liable to account to his cotenants for their share of the reasonable rental value of such occupancy, possession and use." 157 Ohio St. 503, 106 N.E.2d 77 (1952), syllabus. The holding in *Cohen* was later codified in R.C. 5307.21 which states that

> One tenant in common, or coparcener, may recover from another tenant in common, or coparcener his share of rents and profits received by such tenant in common or coparcener from the estate, according to the justice and equity of the case. One coparcener may maintain an action of waste against another coparcener. No coparcener shall have any privileges over another coparcener, in any election, division, partition, or matter to be made or done, concerning lands which have descended.

{¶24} This court reiterated the statutory provision and held that "[a] cotenant out of possession is entitled to his share of the reasonable rental value of the property exclusively used by the other cotenant[,]" and that the burden is on the Plaintiff to "establish the reasonable rental value of the property in question." *Burchfield v. Whaley*, 4th Dist. Hocking No. 00CA02, 2001-Ohio-2659, *3.

{¶25} In the matter at bar, the trial court denied Chuma's claim for reasonable rental value finding as follows:

> The Court finds that from November 2016 through March 2019 Patterson made each mortgage payment for a total of $37,584.00 in mortgage payments made by Patterson over the course of those 29 months. * * *
> Evidence revealed that the parties started having domestic problems in February 2017. Specifically, Chuma pled guilty to assaulting Patterson in Circleville Municipal Court Case No.

CRB1700224(A) in February 2017. (Plaintiff's Exhibit 10). Chuma was arrested again on March 18, 2018 for felony domestic violence against Patterson (Plaintiff's Exhibit 11). Lastly, on May 16, 2018 a Domestic Violence Civil Protection Order was granted to Patterson against Chuma in Pickaway County Common Pleas Court case number 2018CPO0021. The Order required Chuma to vacate the Property and was effective for six (6) months.

For the record, the Court notes that Chuma was prohibited from coming onto the Property per the civil protection order that expired on November 16, 2018 and thus she was excluded 20 months and not 23 months.

* * * The Court is of the opinion that simply because there "were no funds to account for" does not automatically remove this case from the equitable dictates of R.C. §5307.21[.]

* * *

This Court finds that "according to the justice and equity of the case," neither party should prevail against the other party. The Court finds that Patterson never received any "rents or profits" from the Property. While Chuma tries to lessen her criminal conduct by claiming rents "only" for the periods of time she was not under a restraining order, the Court is nevertheless convinced that awarding her any rent for any of the time she was absent from the Property would not do justice and equity to the case. Plaintiff's claim for $20,000.00 for fair rental value is DENIED.

**{¶26}** Chuma challenges the trial court's application of R.C. 5307.21 "according to the justice and equity of the case" and determination that her claim fails. Courts "must apply a statute as it is written when its meaning is unambiguous and definite." *Portage Cty. Bd. Of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 1991-Ohio-291, 660 N.E.2d 463. Chuma does not claim R.C. 5307.21 is ambiguous, rather, she disputes the trial court's factual findings and its failure to apply *Cohen*.

**{¶27}** In *Cohen*, "the only issue presented, being whether, *under the circumstances*, defendants are entitled to recover anything from plaintiff for her continued sole occupancy of the Caplin Place premises." (Emphasis added).

*Cohen*, 157 Ohio St. 503, 106 N.E.2d 77 (1952), syllabus.   The Supreme Court then reviewed the facts of the case.  The trial court here, similarly reviewed the specific circumstances of the case.  We therefore construe Chuma's assignment of error as contesting the manifest weight of the evidence.

{¶28} The civil manifest weight standard of review is the same standard that is applied in criminal cases.  *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.  In determining whether the trial court's denial of Chuma's claim is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice warranting reversal.  *Douglas v. Boughton*, 4th Dist. Lawrence No. 13CA7, 2014-Ohio-808, ¶ 19.  "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."  *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶29} We hold that the trial court's decision finding it is not in the interest of justice and equity for Patterson to pay half of the reasonable rental value of the house to Chuma is supported by the manifest weight of the evidence.  This is because Chuma was mandated to vacate the premises based on her conduct of physically assaulting Patterson on two separate occasions.  Contrary to Chuma's claim, Patterson did not oust her by calling law enforcement and obtaining a

protection order to secure his physical safety. Chuma's assault on Patterson led to the order for her to leave the premises. Further, it is not in the interest of justice to expect Patterson to jeopardize his physical safety by allowing Chuma to reside with him again. Chuma did not present any evidence that she requested for Patterson to vacate and for her to exclusively reside at the house and take on the mortgage payments. To the contrary, Chuma testified that she could not afford even half of the mortgage payment after obtaining different employment in June 2017. The evidence submitted was Patterson informing Chuma that while he is residing at the house, she cannot be there.

{¶30} Additionally, Chuma should not benefit from her wrongdoing of physically assaulting Patterson. *See Martindale v. Martindale*, 4th Dist. Athens No. 18CA17, 2019-Ohio-3028, ¶ 55, quoting *Brockmeier v. Brockmeier*, 91 Ohio App.3d 689, 693, 633 N.E.2d 584 (1st Dist.1993), quoting *Williams v. Williams*, 10th Dist. Franklin No. 92AP-438, 1992 WL 246020, *1 (Sept. 24, 1992) (applying " 'the fundamental and equitable principle that wrongdoers ought not benefit from their wrongdoing.' ")

{¶31} Chuma also could have filed the partition proceedings back in February 2017 when Patterson began exclusively residing at the house. Chuma instead, waited until January 2019—two months after the protection order expired. Finally, we find Chuma's reliance on the holding in *Cohen* is misplaced as Chuma disregards the factual distinctions in that case. In *Cohen*, Lena Cohen, the former step-mother of the defendants, had one-half interest in the house and defendants each had a one-tenth interest. *Cohen*, 157 Ohio St. at

504, 106 N.E.2d 77 (1952). The defendants' father passed away and Lena continued to reside at the home exclusively, and after several years, defendants demanded rent money. *Id.* at syllabus.

{¶32} Unlike the case at bar, the defendants did not conduct themselves in a manner that resulted in their immediate removal from the house or had an order from a court to stay away from Lena. *Id.* Further, during the period of Lena's sole occupancy of the house, the defendants paid the taxes and premiums on the insurance. *Id.* Chuma, on the other hand, assaulted Patterson, was ordered to vacate the premises, and did not make any contribution to the mortgage payment since November 2016.

{¶33} We conclude, under the specific circumstances of the case, that Chuma is not entitled to half of the reasonable rental value of the house during Patterson's exclusive use. The trial court's decision is affirmed and Chuma's assignment of error is overruled.

## II.     Patterson's Breach of Contract Claim

{¶34} Patterson does not dispute the trial court's factual findings that Chuma was responsible for half of the mortgage payments and failed to abide by the agreement. Patterson, however, disagrees with the trial court's application of equity principles and argues the trial court failed to apply the principles of contract law. Patterson argues the trial court did not address his breach of contract claim and instead confused his claim with his alternative claim of unjust enrichment. Patterson maintains that by paying Chuma's share of the mortgage payment, he suffered a financial set back of over $18,000.

{¶35} Chuma similarly asserts that the trial court did not address Patterson's breach of contract claim, but argues the trial court did not err in concluding she did not owe half of the mortgage payments. Chuma maintains that the initial agreement to equally pay for the mortgage was modified with Chuma staying home with the parties' daughter and Patterson making the full mortgage payment. Further, Chuma declares that it is not fair for her to pay for half of the mortgage while Patterson excluded her from residing at the house.

{¶36} In response, Patterson reiterates that the trial court found that the parties had an agreement to split the mortgage payment and that Chuma breached the agreement by failing to pay her share.

A. Law and Analysis

{¶37} Generally, "[l]egal issues involving contract interpretation are subject to a de novo standard of review." *S.P. Drilling Servs., Inc. v. Cooper's Excavating, L.L.C.*, 4th Dist. Adams No. 17CA1058, 2019-Ohio-55, ¶ 14. But great deference is given to the trial court's factual findings supporting its legal conclusions. *Id.* Thus, the trial court's decision will be upheld "if some competent, credible evidence exists to support them." *Id.* Accordingly, "we do not review the trial court's factual findings under an abuse of discretion standard, but rather, we look to see if those facts and the resulting judgment are both supported by the weight of the evidence." *Id.*, citing *Patton v. Patton*, 4th Dist. Adams No. 01CA712, 2001-Ohio-2599. " '[W]e are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions.' " *Bumgarner*

*v. Bumgarner*, 4th Dist. Highland No. 09CA22, 2010-Ohio-1894, ¶ 20, quoting

*Bugg v. Fancher*, 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 9.

**{¶38}** A contract can be verbal and may be enforceable provided there is

"sufficient particularity to form a binding contract[.]" *Kostelnik v. Helper*, 96 Ohio

St,3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 15. "The burden of proof on one

seeking to enforce an oral contract requires that party to prove the existence of

the contract by clear and convincing evidence." *Bumgarner* at ¶ 20, citing

*Nofzinger v. Blood*, 6th Dist. Huron No. H-02-014, 2003-Ohio1406, ¶ 53.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of

the syllabus.

**{¶39}** In order to prevail on a breach of contract claim, " 'a party must

prove the existence of a contract, the party's performance under the contract, the

opposing party's breach, and resulting damage.' " *Martin v. Jones*, 2015-Ohio-

3168, 41 N.E.3d 123, ¶ 36 (4th Dist.), quoting *DePampei v. Santabarbara*, 8th

Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20.

> As this Court explained in *Martin* at ¶ 38, "[c]ourts recognize three types of contracts: express, implied in fact, and implied in law." Citing *Legros v. Tarr*, 44 Ohio St.3d 1, 6, 540 N.E.2d 257 (1989); *Spectrum Benefit Options* at ¶ 26. " 'In express contracts the assent to its terms is actually expressed in offer and acceptance.' " *Legros* at 6; quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938). By contrast a contract implied in fact is " 'a contract that the parties presumably intended, either by tacit understanding or by the assumption that it existed.' " *State ex rel.*

*R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 31; quoting Black's Law Dictionary 322 (7th Ed.1999). Finally, contracts implied in law are not true contracts, but liability is imposed based on quasi or constructive contract. *Legros* at 7. As we further explained in *Martin*, "[t]he primary difference between express contracts and contracts implied in fact is one of proof—the former is proven by words (oral or written) and the latter is proven by acts, conduct, and circumstances." *Martin* at ¶ 40; citing *J.S. Keate & Co. v. Barnett's Car Wash, Inc.*, 1st Dist. Hamilton Nos. C–920895 and A–8903768, 1994 WL 10650, *3 (Jan. 19, 1994); citing *Weinstein v. Newman*, 89 Ohio App. 301, 101 N.E.2d 772 (1st Dist.1951).

In order for it to be enforceable, a contract must be both definite and certain. *Martin* at ¶ 42; citing *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19.

*S.P. Drilling Servs., Inc.*, 4th Dist. Adams No. 17CA1058, 2019-Ohio-55, ¶ 16-17.

"The words and conduct of the parties disclose the intent to contract and the terms of the oral agreement." *Maddali v. Haverkamp*, 1st Dist. Hamilton No. C-210358, 2022-Ohio-3826, ¶ 21.

**{¶40}** In the matter at bar, the trial court denied Patterson's breach of contract claim finding that:

Prior to purchasing the Property, Chuma and Patterson agreed that each would be responsible for paying one-half (1/2) of each monthly mortgage payment. * * *

The agreement between the parties appears to have worked through November 2016 when Chuma began refusing to pay her one-half (1/2) share of the monthly payments, and never made a payment from that point forward.

The Court finds that from November 2016 through March 2019 Patterson made each mortgage payment for a total of $37,584.00 in mortgage payments made by Patterson over the course of those 29 months.
* * *

For the record, the Court notes that Chuma was prohibited from coming onto the Property per the civil protection order that expired on November 16, 2018 and thus she was excluded 20 months and not 23 months.
* * *

This Court finds that "according to the justice and equity of the case," neither party should prevail against the other party. * * *

Likewise, awarding Patterson judgment for one-half ($18,793.00) the mortgage payments he made would not do justice to the case since he had exclusive use of the property.

{¶41} The record supports the trial court's finding that Chuma and Patterson had an express contract to equally contribute to the mortgage payment.  Both testified that they jointly purchased the house with the intent to reside together as a couple and had agreed to contribute equally toward the mortgage payment.  But then in November 2016, the circumstances changed with Chuma quitting her job with Patterson's encouragement, Patterson providing Chuma his bank account information, and the full mortgage payment directly withdrawn from Patterson's bank account.[2]

{¶42} In February 2017, Chuma physically assaulted Patterson and again changed the circumstances surrounding the parties 2015 express contract to reside together and equally share the mortgage payment.  Chuma's conduct resulted in her immediate removal from the residence until January 2018, and again in March 2018.  Although the trial court found that there was an express contract between Chuma and Patterson, it nonetheless applied the principles of equity.  We find no error because the specific circumstances of the case at bar demonstrate there was no meeting of the minds after November 2016.  "When a contract fails for a lack of 'meeting of the minds,' equity should be imposed to

[2] There is conflicting evidence on whether the change in circumstance was agreed upon and formed a new agreement between Chuma and Patterson.  The trial court factually found that Chuma refused to pay.  We are mindful that deference is given to the findings of the trial court as "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

prevent unjust enrichment." *Myers v. Good*, 4th Dist. Ross No. 06CA2939, 2007-Ohio-5361, ¶ 12, citing *Hailey v. MedCorp., Inc.*, 6th Dist. Lucas No. L-05-1238, 2006-Ohio-4804, ¶ 17-18.

{¶43} Patterson therefore failed to demonstrate by clear and convincing evidence that after November 2016, he and Chuma continued their express agreement to equally share paying the mortgage.

{¶44} Finally, we reject Patterson's position that we follow the holding of the Fifth District Court of Appeals decision in *Ruedele v. Kiefer*, 5th Dist. Licking No. 93 CA 3, 1993 WL 438787 (Oct. 8, 1993). Patterson's reliance on *Ruedele* is misplaced as that case is factually distinguishable from the case at bar in an important way.

{¶45} In *Ruedele*, the parties jointly purchased real estate and agreed to pay equally on the mortgage. *Id.* at *1. Ronald Ruedele, however, was unable to contribute an equal share and became indebted to Joan Kiefer including agreeing to pay her interest for the monies he owed. *Id.* Ruedele assaulted Kiefer and vacated the home informing Kiefer he would not contribute to the residential expenses. *Id.* Several months later, Kiefer obtained a civil protection order. *Id.* Part of the order mandated Ruedele to pay half of the mortgage payment. *Id.* Ruedele initiated a partition claim and Kiefer counterclaimed alleging Ruedele breached the agreement between them by failing to pay half of the mortgage. *Id.* at *2. After a bench trial, the trial court granted Kiefer's claim for breach of contract. *Id.*

**{¶46}** The Fifth District affirmed and gave deference to the trial court's factual findings which were supported by the record. *Id.* at *3-4. The Fifth District held that the parties agreed to equally share in paying the mortgage and there was no contingency to deviate from the agreement if "one party moved out of the house." *Id.* at *3. The Fifth District concluded that Ruedele "could have ended his duty to pay such expenses by pursuing a partition action earlier. Appellant cannot now claim that appellee prevented him from completing the agreement by refusing to voluntarily sell." *Id.* at *4.

**{¶47}** Unlike the facts in *Ruedele*, where he agreed to repay Kiefer for his portion of the mortgage payment with interest, here, on the other hand, there was no evidence presented that Patterson questioned Chuma as to why beginning in November 2016, she stopped contributing toward the mortgage payment. Additionally, Patterson's protection order did not include a condition that Chuma contribute to the mortgage payment. Finally, after living apart for several months, there was no discussion on what contribution Chuma would make after she and Patterson reconciled and began living together again in January 2018. During the reconciliation period, Patterson made the full mortgage payment.

**{¶48}** We hold that Patterson failed to meet his burden to warrant relief. The trial court's decision is affirmed and Patterson's first assignment of error is overruled.

III.      Patterson's Unjust Enrichment Claim

**{¶49}** For the unjust enrichment claim, Patterson maintains that Chuma benefited from him making the full mortgage payment in that the house was not foreclosed upon and the loan balance was decreased. Patterson argues the trial court erred by applying the equity principle in R.C. 5307.21 and not the correct unjust enrichment factors.

**{¶50}** Chuma insists that Patterson was the one who benefited by having exclusive use of the house. Additionally, there were no proceeds in excess of the loan and fees to be divided so there was no financial benefit to anyone.

A.  Law and Analysis

**{¶51}** Unjust enrichment "is an equitable claim based on a contract implied in law[.]" *Bunta v. Superior VacuPress, L.L.C.*, __ Ohio St.3d __ , 2022-Ohio-4363, __ N.E.3d __ , ¶ 36. "[T]he purpose of which 'is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant[.]' " *Id.*, quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954). In order to prevail on an unjust enrichment claim, it must be established that "(1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment." *Id*. Unjust enrichment must be proven by the preponderance of the evidence. *Pickaway County Ross-Co Redi Mix Co., Inc. v. Steveco, Inc.*, 4th Dist. Pickaway No. 95CA3, 1996 WL 54174, *3 (Feb. 6, 1996).

> " '[A] preponderance  of evidence means the greater weight of
> evidence. * * * The greater weight may be infinitesimal, and it is only

necessary that it be sufficient to destroy the equilibrium.' " (Ellipsis sic.) *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987), quoting *Travelers' Ins. Co. of Hartford, Connecticut v. Gath*, 118 Ohio St. 257, 261, 160 N.E. 710 (1928).

*State v. Nicholas*, __ Ohio St.3d __ , 2022-Ohio-4276, __ N.E.3d __ , ¶ 29.

**{¶52}** But "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject matter." *Id.* "It is generally agreed that there cannot be an express agreement and an implied contract for the same thing existing at the same time." *Hughes* at 335.

**{¶53}** The trial court denied Patterson's unjust enrichment claim concluding:

> Prior to purchasing the Property, Chuma and Patterson agreed that each would be responsible for paying one-half (1/2) of each monthly mortgage payment.
> * * * The parties were already in default on the mortgage when Chuma filed her complaint.
> * * *
> This Court finds that "according to the justice and equity of the case," neither party should prevail against the other party. * * * Likewise, awarding Patterson judgment for one-half ($18,793.00) the mortgage payments he made would not do justice to the case since he had exclusive use of the property.
> Lastly, there is no unjust enrichment to Chuma by virtue of Patterson making the monthly payments. The Property sold for basically what was owed on it. Patterson's payment of the mortgage for 29 months only decreased the mortgage payoff and resulted in little actual equity in the Property. Thus, there is no unjust enrichment. Patterson loses on his claim of unjust enrichment.

**{¶54}** As we previously held, Chuma and Patterson had an express contract to equally contribute to the mortgage payment, but based on the parties' conduct, Chuma and Patterson no longer had a meeting of the minds after November 2016 when Chuma stopped contributing to the mortgage payment. Therefore, it was proper for the trial court to address Patterson's alternative claim

of unjust enrichment. The trial court's denial of Patterson's unjust enrichment claim was based on his failure to demonstrate, by preponderance of the evidence, that he conferred a benefit on Chuma which under the circumstances was unjust to do so without payment. We agree with the trial court's factual and legal conclusion.

{¶55} The record of the case demonstrates, with the exception of January 2018 to March 2018, that Patterson resided at the jointly-owned house exclusively from February 2017 until it was sold in July 2020. Patterson testified that he made the full mortgage payments without any contribution from Chuma from November 2016 until March 2019. According to Patterson, by keeping the mortgage current during that period, Chuma benefited by avoiding a foreclosure action. Additionally, Patterson argues that his payments reduced the mortgage balance so that there was no deficit that Chuma had to pay when the house was sold at auction. But the benefits Patterson asserts are conferred on him as well. And as we previously held, "a plaintiff to an unjust enrichment action cannot recover more than the benefit to the defendant." *Burchfield v. Whaley*, 4th Dist. Hocking No. 00CA02, 2001-Ohio-2659, *3, citing *Sankin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App.3d 169, 176 (8th Dist.1992).

{¶56} The house not being foreclosed upon benefited both Chuma and Patterson, but afforded Patterson the additional benefit of allowing him to continue to reside at the house exclusively until it was sold—including more than a year without making any mortgage payments. The benefit of having no fees to pay out after the house was sold benefited both. Moreover, Patterson has failed

to provide a definite amount that Chuma retained under circumstances in which it was unjust to do so without payment.

{¶57} Accordingly, we affirm the trial court's decision and overrule Patterson's second assignment of error.

CONCLUSION

{¶58} We overrule Chuma and Patterson's assignments of error and affirm the trial court's decision denying Chuma's claim for reasonable rental value, and Patterson's claims for breach of contract and unjust enrichment.

**JUDGMENT AFFIRMED.**

<u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and the parties shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

P.J., Smith and J., Abele:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**